643 P.2d 733

**John E. O'HARE, Plaintiff/Appellee,**

v.

**Raymond GRIESMER, Defendant/Appellant.**

**No. 2 CA–CIV 4110.**

Court of Appeals of Arizona, Division 2.

Feb. 10, 1982.

Rehearing Denied March 24, 1982.

Review Denied April 13, 1982.

Gerard R. O'Meara, Tucson, for plaintiff/appellee.

Ronald W. Sommer, Tucson, for defendant/appellant.

## OPINION

BIRDSALL, Judge.

This is an appeal from a decree entered after trial to the court without a jury on plaintiff-appellee John E. O'Hare's complaint for specific performance and quiet title. The court ordered specific performance of the subject contract for the sale of a lot on "A" Mountain in Tucson. The defendants in the trial court were Robert Griesmer and wife, Carol, and Robert's father, Raymond Griesmer. Raymond is the only appellant. At the time of trial the appellee and appellant agreed that Robert and Carol were no longer defendants, presumably because they had quit-claimed the lot to Raymond and no longer had any interest in the case. The contract was between Robert and Carol as sellers and the appellee as purchaser. The sale did not close and this action resulted.

Appellant presents the questions on appeal as follows:

1) Did the trial court commit error in granting an oral motion to amend at the time of trial whereby Raymond Griesmer was added as a defendant in Count One?

2) Was plaintiff entitled to enforce the sales agreement after abandoning or materially breaching it?

## THE MOTION TO AMEND

This question must be considered under a very confused record. At the commencement of the trial both counsel orally advised the court, incorrectly, that Robert and Carol were never served. The record contains

returns of service on both. (The record shows no service on Raymond, however.) In any event, counsel agreed that Robert and Carol were no longer parties. Counsel for Raymond then moved to dismiss Count One, the count for specific performance, contending that Raymond was not a defendant on that count. In response to that motion the appellee moved to amend his complaint to add Raymond as a defendant on Count One. The trial court did not rule on the motion to dismiss and took the motion to amend under advisement. The court granted the motion to amend after the trial at the same time that it ruled on the merits of the case.

The complaint named Robert, Carol and Raymond as defendants. Paragraph one of Count One alleged in part, "that all defendants have caused an event to occur . . . out of which event the claims which are the subject matter of this complaint arose." The subsequent paragraphs of Count One contained the usual allegations for a specific performance action against Robert and Carol. Generally it was alleged that Robert and Carol agreed to sell the real property to the appellee; that he was ready and willing to consummate the sale; that Robert and Carol had refused to perform; and that damages would be inadequate. The prayer for relief on Count One was for specific performance by Robert and Carol. It also contained a prayer that the court "Grant such other and further relief as the court deems just and proper under the circumstances."

Count Two of the complaint contained the necessary allegations for a quiet title action, alleging, generally, that all defendants claimed an interest in the property adverse to the plaintiff.

Tucson attorney Harold Hyams filed an answer and counterclaim on behalf of all the named defendants, specifically naming them, without any indication that Raymond was not answering Count One. Appellant's trial counsel was substituted for Hyams prior to trial.[1] The stipulation and order effecting this change clearly showed that new counsel was substituted for Raymond only.

After this substitution, a motion for summary judgment was filed on behalf of Raymond. In that motion the appellant claimed that Robert had conveyed the property to him on July 14, 1978. Appellant's affidavit to that effect was filed with the motion. Appellant argued in his motion that he could not be ordered to specifically perform the contract for sale of the property because he was not a party to the contract. Appellee responded and filed a cross motion for summary judgment arguing that Raymond knew of the contract to sell to the appellee, which was made February 18, 1978, when he received the deed, and therefore took the property subject to that contract. In the cross motion the appellee asked that Raymond be directed to "carry out the sale in accordance with the contract."

The response to the appellee's cross motion recited that it was made by *Robert* although it was filed by *Raymond's* counsel. We believe this was a clerical error only, but it serves to further illustrate the confused state of the record. In this response, counsel for Raymond (or Robert) claimed for the first time that Raymond was not a party to Count One and that an amendment was necessary to obtain specific performance against Raymond.

These motions for summary judgment were denied because there were genuine issues of material fact to be decided.

■ We have given this detailed account of the trial court proceedings because we hold, *under this record,* that the trial judge properly granted the motion to amend by adding Raymond as a defendant on Count One of the complaint. We find that Raymond was not prejudiced by the amendment or by the trial court's reservation of its ruling until after the trial. It is evident that Raymond knew that the appellee claimed that his interest in the lot was subject to the contract and that the court

---

1. Appellant again has new counsel on appeal.

might enter an order substantially affecting his interest. His contentions that the amendment was untimely and that he was denied due process are not convincing in the light of the record.

## WAS THE APPELLEE ENTITLED TO SPECIFIC PERFORMANCE?

■ After the deposit receipt and sales agreement was signed, the appellee deposited his earnest money payment with the title company escrow agent. After that, no one did anything further toward closing the sale. The agreement contained the following relevant provisions:

"Closing date: Not later than 45 days after execution of offer.

. . . . .

Time is of the essence of this agreement."

Appellant argues that the appellee abandoned the contract by failing to close within the 45 days. The sale was not closed within the 45 days because neither party did anything further toward performance. In the absence of other provisions in the contract there was a mutual obligation for each party to perform or tender performance within the 45 days. *Dalton v. McLaughlin*, 130 Ariz. 270, 635 P.2d 863 (1981).

In this case, unlike *Dalton*, the contract *did* contain another provision:

"If either party elects to cancel this agreement because of the failure of the other party to comply with all the terms and conditions of this agreement, the party so electing shall, after the expiration of the time periods as provided in A.R.S. 33-741, from date provided herein for closing, instruct escrow agent to cause to be delivered to the other party a written demand for compliance within ten days after the date said demand was deposited in the United States Mail. . . . However, this agreement may be enforced by specific performance or other appropriate remedy."

Pursuant to this provision if the sellers desired to cancel the agreement they were required to cause this ten day notice to be given. This was not done. Instead the escrow agent, upon instructions from the appellee, sent a letter on August 4, 1978, to Mr. and Mrs. Robert Griesmer, with a copy to Raymond, stating, in part, ". . . we are in a position to close this transaction. It is imperative that you contact our office within ten days to set up an appointment for final closing." None of the defendants responded and this action followed.

Although the appellee did nothing toward performance during the 45 days, he had a right to rely on the contract provision requiring notice to him if the sellers were going to cancel. No evidence suggests that he abandoned the contract.

■ Appellant also argues that evidence of appellee's negotiations with Raymond, including an offer of money, during the time prior to the August notice, estopped him from seeking specific performance. Appellant contends that this evidence tends to prove that the appellee considered the contract terminated. Since there is evidence to the contrary, the trial court implicitly found that the appellee neither regarded the contract as terminated nor led Raymond to believe that he did.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.