661 P.2d 1145

Barry S. WOLIANSKY,
Plaintiff/Appellant,

v.

T.A. MILLER and Albino Pugliani, dba
Galaxy Manufacturing Co., and dba Gal-
axy Homes; and Anthony Narducci and
Beatrice Narducci, husband and wife,
Defendants/Appellees.

No. 2 CA–CIV 4265.

Court of Appeals of Arizona,
Division 2.

Jan. 17, 1983.

Rehearing Denied March 1, 1983.

Review Denied April 5, 1983.

John Wm. Johnson and Margrit Cromwell, Tucson, for plaintiff/appellant.

Kimble, Gothreau, Ryan, Nelson & Cannon, P.C. by Carmine A. Brogna, and Michael J. Vingelli, Tucson, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

In this lawsuit, appellant seeks specific performance of a contract to convey lot 16 in a subdivision known as Golden West Villas, or, in the alternative, damages for breach of contract. He also seeks damages due to the delayed conveyance of two other parcels of real property in the same development. The trial court, sitting without a jury, denied specific performance of the contract for sale of lot 16 and refused to award the appellant damages due to appellee's delayed conveyance of the two other lots.

On July 14, 1978, appellant Woliansky contracted to buy three lots numbered 37, 38 and 39, together with townhouses to be constructed on the lots, from the appellees Miller and Pugliani. Each contract called for the closing date to be six months from the date of the contract or upon completion of the townhouse.

Woliansky then assigned his interest in lot 38 to Les Caid in return for Caid's assignment of his interest in lot 16 in the same development to Woliansky.

The terms of the lot 16 contract were similar to the terms of the lot 38 contract except the closing date was to be on January 9, 1979, or upon completion. Woliansky then contracted to sell lot 16 to Sheila Summers who ordered "extras" on the lot. The Woliansky-Summers contract, however, was subsequently rescinded.

On March 8, Woliansky was informed through his escrow officer, that appellees were cancelling his contract for lot 16 due to his failure to close on time. Woliansky responded by filing a suit for specific performance of the lot 16 contract. Before the suit was resolved, appellee conveyed lot 16 to subsequent buyers who took with notice of Woliansky's interest.

Appellees then notified Woliansky that they were also rescinding the contracts for lots 37 and 39 on the grounds that Woliansky misrepresented his financial status. Woliansky nevertheless proceeded to contract with two other purchasers to sell lots 37 and 39. Eventually the appellees conveyed lots 37 and 39 to Woliansky but the delay caused Woliansky to lose his prospective purchasers.

## CONTRACT FOR LOT 16

Woliansky argues that contrary to appellee's contention, he was not in default on January 9, 1979, and thus the trial court erred in refusing to grant specific performance of the lot 16 contract. He argues that his performance was not due on January 9 because the townhouse had not yet passed the final city inspection and actual work on the townhouse was not finished. The terms of the contract called for a closing date to be "no sooner than five (5) months from date of this contract or upon completion." The contract itself does not define the word "completion."

Appellees argued and the trial judge agreed that Woliansky was in default on January 9 because five months from the date of contract had elapsed and the townhouse had been substantially completed. We disagree. Absent a contractual provision to the contrary, "completion" does not occur until the building has reached the "state in which no essential element is lacking." *See* Black's Law Dictionary, revised 4th ed. (1968). The townhouse on lot 16 did not pass final city inspection until March 13, the date on which the electrical portion of the structure was finally approved.

The City of Tucson has adopted Ordinance # 5334 § 305(d) which provides "Utilities will not be released for permanent hookup until all work has received a final approval." Pursuant to this ordinance, the utility company will not supply the dwelling with electric power until after the building has passed the final city inspec-

tion. We believe the parties contemplated that electric appliances would be used in the dwelling. Thus, the unit was "completed" and the buyer's performance fully due only after the electricity could be connected. The dwelling was not "completed" before March 13, the date on which it passed final city inspection and became ready for occupancy. Therefore, appellee's February forfeiture of Woliansky's interest was premature.

Appellees have further argued that Woliansky did not prove he was willing and able to perform and thus was not entitled to enforce the contract. Before a buyer is awarded specific performance he generally must satisfy the court that he is ready and able to perform. However, in a case such as this where the seller repudiates the contract, the purchaser is not required to tender performance before commencing the action in order to preserve his right to enforce the contract. *Nelson v. Cannon*, 126 Ariz. 381, 616 P.2d 56 (App.1980). Consequently, Woliansky is entitled to either specific performance or damages. Specific performance is ordinarily available to enforce contracts for the sale of real property because land is viewed as unique and an award of damages is usually considered an inadequate remedy. *Sabin v. Rauch*, 75 Ariz. 275, 255 P.2d 206 (1953). Wide discretion is afforded the trial court to determine whether damages is an adequate remedy in contracts concerning the sale of real property, and specific performance is never a matter of absolute right. *Ensign v. Bohn*, 1 Ariz.App. 386, 403 P.2d 321 (1965). In cases where the purchaser does not desire the real property for personal use but instead wants to acquire the land merely for the profit to be gained upon resale, damages would theoretically be an adequate remedy. Because Woliansky is entitled to a remedy and has requested specific performance or, in the alternative, damages, we remand this case to the trial court to determine the appropriate remedy for breach of the contract to sell lot 16.

### CONTRACTS FOR LOTS 37 and 39

Woliansky contends that he incurred damages in the form of lost profits due to appellee's delayed conveyance of lots 37 and 39, and he is therefore entitled to relief.

Appellees argue that Woliansky is not entitled to relief because he failed to prove he suffered damages attributable to the delayed conveyance. The trial court rendered a general verdict in favor of appellees. A general judgment of the trial court carries with it a finding of all facts necessary to support the judgment. *Brasher v. Gibson*, 101 Ariz. 326, 419 P.2d 505 (1966); *Citizens State Bank of Hugo v. Hall*, 413 P.2d 513 (Okl.1966). We must thus conclude the trial court made a factual finding that Woliansky was not damaged as a result of the delayed conveyance. An appellate court must view the evidence in the light most favorable to the prevailing party. *McFarlin v. Hall*, 127 Ariz. 220, 619 P.2d 729 (1980).

We note from the record that testimony was adduced by appellant that his sale of the lots was stymied through appellees' delay in performance. Such a conclusion is not compelled. The conclusions of fact to be derived from the testimony lie peculiarly within the province of the trial court and we cannot second-guess the trial court's evaluation of the testimony. Moreover, any loss of profit from loss of a resale when the property has not been transferred to buyer is generally considered too speculative unless it was within the contemplation of the parties and can be proven with reasonable certainty. *Gilmore v. Cohen*, 95 Ariz. 34, 386 P.2d 81 (1963). See Dobbs, Remedies, § 12.3, p. 807, et seq.; *Hadley v. Baxendale*, 9 Exch. 341, 151 Eng. Reprint 145 (1854). We note that this was a delayed sale, instead of a non-conveyance. The proper measure of damages would have been loss of rents but appellant did not ask for that remedy.

We therefore affirm the trial court's decision to deny Woliansky recovery for the delayed conveyance of lots 37 and 39.

### ATTORNEY'S FEES

Appellees do not disagree with Woliansky's contention that he, as the prevailing

party in the suit to enforce the contracts, is entitled to recover reasonable attorney's fees pursuant to a contractual clause providing:

"In the event of legal action between any of the signatories to this agreement to enforce the terms hereof the prevailing party shall be entitled to reasonable attorneys fees and court costs from the party adjudged against."

We therefore remand this case to the trial court with directions to grant Woliansky either specific performance or damages regarding the lot 16 contract and to award Woliansky reasonable attorney's fees and court costs.

Affirmed in part, reversed in part.

HOWARD, C.J., and BIRDSALL, J., concur.