139 Ariz. 503 (1983)
679 P.2d 526
Frank D. SECAN and Martha Secan, husband and wife, Plaintiffs/Appellants,
v.
Art DUNBAR, a single man; Becky Gogle, a single woman; Glen Helm, a single man; James McConnell, a single man; HMDG Investments, a partnership; CDO, Inc., an Arizona corporation, Defendants/Appellees.
No. 2 CA-CIV 4654.
Court of Appeals of Arizona, Division 2.
December 9, 1983.
Rehearing Denied January 25, 1984.
Review Denied April 10, 1984.
Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Gary F. Howard, Tucson, for plaintiffs/appellants.
*504 Whitehill, Stolkin, Karp, West, Weiss & Berger, P.C. by David D. West, Tucson, for defendant/appellee Gogle.
Bogard & Larriva by Phillip H. Larriva, Tucson, for defendants/appellees Helm, McConnell, HMDG and CDO.
OPINION
HOWARD, Chief Judge.
Appellants sued appellees for specific performance of their contracts to sell to appellants their interest in certain real estate. Appellants also sued Becky Gogle, a real estate sales person, and Helm and McConnell for damages allegedly caused by Gogle's breach of her fiduciary duties. The trial court, sitting without a jury, made findings of fact and conclusions of law and entered judgment in appellees' favor. Appellants contend that judgment in the breach of duty case was against the weight of the evidence and contrary to law. We do not agree. Appellants also contend that the trial court erred in denying specific performance. With this contention we do agree.
The main dispute in this case revolves around some land fronting on North Oracle Road in Tucson. This land was apparently rapidly increasing in value. It was originally owned by David Egelston. Gogle had a year's listing on the property but it expired without her being able to sell it. Appellant Frank Secan worked in the same real estate company as Gogle. After the listing expired, Secan made two offers to Egelston through Gogle, both of which were refused.
Several months after his offers were rejected, Secan asked Gogle if she knew what Egelston would take for the property. At this time Gogle informed Secan that she was working for some other persons to purchase the property. She did not tell him who these persons were, but they were Helm and McConnell. Nevertheless, Secan asked her to transmit his offer to Egelston. She agreed and Secan first prepared a handwritten rough draft. After Gogle looked at it, she told him his offer was "light on cash" and he raised the amount of the cash offer, had it typed and gave it to Gogle. There was a place on the offer for the signature of Gogle as the agent, but Gogle never signed it.
Two days later, Secan was told that his offer was refused and that the offer of appellees, including Gogle as a buyer and a partner of HMDG Investments, was accepted.
After learning that appellees' offer was accepted, Secan made a backup offer which he gave to Gogle to deliver to Egelston just in case the sale between Egelston and appellees fell through.
Secan did not lose interest in the property even after it was sold to appellees and eventually made written offers to each of the four partners of HMDG Investments, each offer in the form of a deposit and receipt agreement in which appellants agreed to pay $35,000 cash. Each of the contracts also contained the following language:
"If either party elects to cancel this agreement because of the failure of the other party to comply with all the terms and conditions of this agreement, the party so electing shall, after the expiration of the time period as provided in A.R.S. § 33-741, from the date provided herein foreclosing, instruct the escrow agent to cause to be delivered to the other party a written demand for the compliance within ten days from time of receipt of said demand or ten days from the date said demand was deposited in the United States mail (posting by Certified Mail of such demand to the address herein indicated shall constitute notice of the contents to the party addressed). If the addressed party then fails to comply within the stated period, the escrow shall pay to the party electing to cancel any earnest money deposited. Costs already incurred in closing and/or any obligation for brokerage fee may be deducted from the earnest money if the purchaser is the party in default. However, this agreement may be enforced by specific performance or other appropriate remedy."
*505 Appellees accepted appellants' offer and signed the deposit and receipt agreement and an escrow was opened.
Thereafter, Secan examined a copy of the deed of trust between appellees and Egelston which he previously had. The deed of trust contained the following language:
"Trustor [the appellees] and beneficiary [Egelston] agree that the property described herein may be sold by the Trustors at their discretion providing the net proceeds from any such sale is applied to paying on the principal or within one (1) year applied to improving the remaining property or both."
Secan testified that he became concerned with the language fearing that he would have to make a payment of $105,000 to appellees and make a second payment of $105,000 to Egelston. Therefore, he got Egelston to agree to accept a promissory note in lieu of any cash which he otherwise might be entitled to as a result of the sale, and Secan sent a letter to the escrow agent on the date set for closing instructing the agent that he had taken care of appellees' obligation under the trust agreement by means of the promissory note and demanded that the agent transfer the property to appellants. This, of course, would mean that there would be no cash going to appellees.
Secan got no response to this letter and 25 days after the date set for the closing he got Egelston to sign a letter stating that Egelston would waive the above-quoted provision of his deed of trust. Secan then notified the escrow agent and appellees that he would pay the money required by his deposit and receipt agreements and close. Six days later, on July 5, 1979, appellees sent a letter to appellants rescinding their contracts. This letter did not have in it the ten-day notification language contained in the portion of the deposit and receipt agreements which we have previously set forth. On July 12 and 13 Secan deposited all the funds and signed all the documents necessary to close the transactions with appellees according to the deposit and receipt agreements. To date, appellees have refused to close the transaction and have considered the agreements rescinded.
Any further facts will be set forth as they pertain to the issues under discussion.
THE BREACH OF THE FIDUCIARY RELATIONSHIP
In denying appellants relief on the breach of fiduciary theory, the trial court found that Gogle agreed to present appellants' offer to Egelston but that there was no buyer/real estate agent relationship between them. The trial court further found that appellants had failed to carry their burden of proving their contention that Gogle never presented the offer to Egelston.
Appellants first contend the trial court erred in placing the burden of proof on them. We do not agree. Assuming arguendo that Gogle was appellants' agent for the purpose of presenting the offer, the burden of proof was on appellants to prove that Gogle was guilty of misconduct by not delivering the offer. Cf. Young v. Yeates, 153 Minn. 366, 190 N.W. 791 (1922); Lemons v. Davis, 306 S.W.2d 224 (Tex.Civ.App. 1957); see, Bangs v. Hornick, 30 F. 97 (1887) (failure of agent to follow instructions) and see, Restatement (Second) of Agency comment b to § 379 (burden of proof is on principal to show agent's negligence).
Appellants' reliance on comment e to § 389 of the Restatement is misplaced. This section refers to the agent's duty not to deal with his principal as an adverse party in a transaction connected with the agency without the principal's knowledge and places the burden of proof upon the agent to show either that he has not dealt with his principal as an adverse party or has done so with the principal's knowledge.
The evidence shows that when Gogle transmitted the partnership's offer to Egelston, Egelston then made the counteroffer to appellees who then made another offer which was accepted by Egelston. It is appellants' second contention that Gogle breached her fiduciary duties to them by *506 not telling Secan about Egelston's counteroffer. We do not agree. Gogle had no duty to transmit the counteroffer to appellants. The trial court found that she only agreed to present appellants' offer and that Gogle was not acting as appellants' real estate agent. In other words, she was simply to deliver the offer and nothing more. Since the evidence supports this finding there was no breach of any fiduciary duty.
SPECIFIC PERFORMANCE
The language of the deposit and receipt agreement between appellants and appellees is identical to that contained in O'Hare v. Griesmer, 132 Ariz. 30, 643 P.2d 733 (App. 1982). Here as in O'Hare, the agreement also contained a time is of the essence clause. And here, as in O'Hare, appellees/sellers tried to cancel the contract without giving the ten days' notice required by their contracts. Furthermore, as in O'Hare, appellants here have not abandoned the contract, have deposited the money with the escrow agent and are willing and able to close.
Appellees have two arguments why O'Hare does not govern this case. They first argue that the ten-day notice provision is only required if the seller desires to forfeit the contract and retain any earnest money. This contention is without merit. There is nothing in the language of the clause which suggests that the 10-day notice is required only if the party wishing to cancel wants the earnest money.
Appellees also contend that since specific performance is an action in equity that the trial court was justified in denying it because of appellants' attempt to change the contract by dealing with Egelston directly. We do not agree. Appellants' failure to close on the appointed day gave appellees the right to cancel the contract. However, appellees and appellants had agreed under their contracts that if a party failed to perform they were to be given notice and time in which to comply. The interlude with Egelston resulted in no more than a failure to comply with the terms and conditions of the agreement and having rectified the failure by complying with the deposit and receipt agreements prior to the receipt of a ten-day notice and demand, appellants are entitled to specific performance.
The judgment denying appellants specific performance is reversed and the trial court is ordered to enter a decree granting appellants specific performance of their contracts with appellees. In all other respects the judgment is affirmed.
HATHAWAY and BIRDSALL, JJ., concur.