687 P.2d 362

James C. BLACKMORE,
Plaintiff/Appellant,

v.

Cecil HONNAS and Lottie L. Honnas, husband and wife; Lottie L. Honnas, as Personal Representative of the Estate of Cecil Honnas, deceased, Defendants/Appellees.

No. 2 CA–CIV 4911.

Court of Appeals of Arizona,
Division 2.

Feb. 10, 1984.

Rehearing Denied May 9, 1984.

Review Denied Sept. 20, 1984.

Michael J. Vingelli, Tucson, for plaintiff/appellant.

Robert C. Stubbs & Associates, P.C. by G. Lawrence Schubart and Trudy Kapley, Tucson, for defendants/appellees.

## OPINION

HOWARD, Judge.

This is an action for specific performance and is another case involving a form deposit and receipt agreement that is being used by real estate brokers in the Tucson area. As in *O'Hare v. Griesmer*, 132 Ariz. 30, 643 P.2d 733 (App.1982) this case demonstrates the lack of awareness on the part of some escrows, real estate brokers and lawyers as to the content and implications of this agreement. But first, the facts.

Appellees listed two parcels of land for sale with Strout Realty, Inc., on two separate listing agreements. The purchase price for the first parcel was $105,000 with a 29% downpayment, payable over ten years at 10% interest per annum. The selling price on the other parcel was $111,-000 payable upon the same terms as the first parcel. Both listing agreements contained language which appellant knew

meant there could not be any pre-payments of principal or interest.

Appellant offered, by means of two deposit and receipt agreements, to buy both parcels according to the terms of the listing. Appellees accepted the offers and an escrow was opened.

Both deposit and receipt agreements contained the O'Hare provision for cancellation of the agreement:

"... If either party elects to cancel this agreement because of the failure of the other party to comply with all the terms and conditions of this agreement, the party so electing shall, after expiration of the time periods as provided in A.R.S. § 33–741, from date provided herein for closing, instruct escrow agent to cause to be delivered to the other party a written demand for compliance within ten days from time of receipt of said demand or ten days from the date said demand was deposited in United States mail.... However, this agreement may be enforced by specific performance or other appropriate remedy."

The agreement had a "time is of the essence" clause and provided that the closing was to be as soon as possible, but not later than July 30, 1979.

On May 15, 1979, the escrow sent a letter to appellees notifying them that appellant was in a position to close the escrow and requested appellees to call and make an appointment for a May 18, 1979, closing. After getting no response from appellees, the escrow sent a letter to appellees' attorney stating that appellant was ready, willing and able to close and demanded an immediate closing. The attorney did not respond to the escrow.

On July 27 the escrow sent a letter to appellees and their attorney stating that the closing date was July 30, 1979, and requested that an appointment be made for signing the closing papers. Also enclosed with this letter was a copy of a letter sent to the escrow by the real estate broker who apparently prepared the document involved in this transaction. The letter stated:

"* * *

This letter is to advise and confirm with you that the buyers have done, performed and signed all documents necessary to close the subject transaction. You have advised us that the sellers have ignored your requests for them to close; and, been advised verbally by their attorney that they are not willing and do not plan on closing. For this reason the buyers have not placed their funds into the escrow account as it would just cause a loss of interest earnings to have their funds just sitting idly in the escrow account.

However, the buyers are advising that they stand ready to deliver all of the funds into your escrow within 24 hours notice to them that the sellers have signed all of the documents and closed.

Please advise the sellers of the above facts. Thank You."

Appellees did not go to the closing which resulted in the broker sending, on July 31, 1979, the following letter:

"* * *

I am advising you that in accordance with instruction to me from the buyers in the subject escrow, that they, the buyers, hereby make demand that the sellers close the purchase/sale transaction immediately, in accordance with the terms and conditions of that certain Deposit Receipt and Agreement dated January 30th, 1979.

Also, to advise the sellers that since the sellers did not close the sale/purchase as scheduled and agreed; then, the buyers hereby declare the sellers in default. Under Arizona Law (ARS–33–741) there is allowed a thirty (30) day grace period, after which the buyers may declare a forfeiture of the Contract, and pursue all remedies allowed under the law, which may include court order 'strict performance' as well as 'damages'.

The buyers hereby reinstate 'time is of the Essence'. Thank You."

Although appellant signed all the documents necessary for closing the sale, the

promissory notes that he signed for the balance of the purchase price on both parcels were not in accordance with the deposit and receipt agreements because the notes signed would have allowed appellant to pre-pay any installments of principal and interest. Appellees discussed the closing documents with their lawyer some time around the first half of August 1979 and he advised them not to sign because the promissory notes did not conform with their agreement. Their lawyer also telephoned appellant's attorney and discussed this discrepancy with him.

Various discussions apparently went on into the month of November 1979 concerning the properties. Promissory notes containing the correct language were drafted for signature in November 1979 but they were never signed by appellant.

On December 20, 1979, an attorney for appellees sent the following letter to the escrow:

" * * *

This firm has been substituted for ... as attorneys for Cecil and Lottie Honnas, sellers in the above escrow.

On October 30, 1979 Mr. ... on behalf of the sellers, made demand for a November 15, 1979 closing and if not then closed that a forfeiture be declared.

The instruments furnished in connection with the proposed closing were received after November 19, 1979, and were not in accordance with the Deposit Receipt and Agreement nor did the buyers perform on November 15, 1979, therefore, sellers elect to declare the forefeiture and in accordance with the Deposit and Receipt and Agreement request that the earnest money be forwarded to the undersigned."

On January 30 the escrow sent a copy of this letter to appellant.

■ This case demonstrates vividly the lack of understanding on the part of all persons who were ever concerned with this case as to what the issues were. The relationship between the parties was governed by their contracts which clearly set forth what a party had to do if it wished to cancel the contract because the other party failed to comply with it. As demonstrated in *O'Hare*, if the agreement is not cancelled as required by its terms, it may continue to be viable and a party who originally was not in compliance may later comply and force specific performance. Of course, as suggested by *O'Hare*, if a party not in compliance abandons the contract, he cannot later comply with it and demand performance because the other party thereafter did not follow the terms of the contract as to cancellation.

The focus in the trial of this case was more on irrelevancies than anything else. A great deal of time was spent on the fact that appellant, at the time of the contracts, was only 19 years old and was depending on his father, who was in turn depending on his father, in supplying the necessary cash to pay the downpayments on each parcel. All of this was gone into in spite of the fact that appellees never complained on this score prior to trial. Even at trial Mrs. Honnas never said they had any complaints about the age and wealth of the buyer.

Further complicating this case is the fact that the trial court gratuitously made findings of fact and conclusions of law that were not requested by either party.

■ We commented on the effect of such findings in *United Leasing v. Commonwealth Land Title Agency of Tucson, Inc.*, 134 Ariz. 385, 656 P.2d 1246 (App. 1982). There we said that where sua sponte findings of fact are based on conflicting evidence they will not be disturbed on appeal if there is reasonable evidence to support them. We do not believe this means, however, that such findings should preclude an appellate court from applying the rule that it usually applies when reviewing a case in which there are no findings of fact, since the gratuitous findings do not become part of the judgment. See *Filer v. Maricopa County*, 68 Ariz. 11, 198 P.2d 131 (1948). The rule which we will apply then is that a general judgment of the trial court carries with it a finding of

all facts necessary to support the judgment. *Woliansky v. Miller*, 135 Ariz. 444, 661 P.2d 1145 (App.1983). The evidence in this case clearly shows that the contracts were abandoned.[1]

█ Although the letter of December 20, 1979, did not comply with the requirements of the deposit and receipt agreements, its transmittal certainly had the effect of putting appellant on notice that appellees were trying to cancel the agreement. Thereafter, appellant did nothing. He never made any attempt to comply with the deposit and receipt agreements. In a period of six and one-half months until the complaint was filed, August 15, 1980, he did absolutely nothing. He raised no objection to the attempted cancellation, there was no evidence that the checks representing the earnest money which were sent to appellant were ever returned or not negotiated. The totality of the circumstances clearly shows that appellant had abandoned the contract prior to the instigation of his lawsuit.

Affirmed.

BIRDSALL, C.J., and GILBERT VELIZ, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having recused himself in this matter, Judge GILBERT VELIZ was called to sit in his stead and participate in the determination of this decision.

---

1. Generally on the issue of abandonment of a land contract by the purchasers see Annot. 68 A.L.R.2d 581.