701 P.2d 319

**Coy WOOD and Sylvia Wood, husband and wife, Plaintiffs-Respondents,**

v.

**Rita SIMONSON, Defendant-Appellant.**

**and**

**James F. Gaved and Lois J. Gaved, husband and wife, Defendants-Appellants.**

**Nos. 14611, 14653.**

Court of Appeals of Idaho.

June 3, 1985.

Robert M. Tyler and Charles L. Hay of Elam, Burke, Evans, Boyd & Koontz, Boise

and Jack H. Robison of Johnson & Olson, Pocatello, for defendants-appellants, Gaveds.

Ronald J. Jarman, Pocatello, for defendant-appellant, Simonson.

Randall C. Budge of Racine, Olson, Nye & Cooper, Pocatello, for plaintiffs-respondents.

SWANSTROM, Judge.

Coy and Sylvia Wood, as potential purchasers, and Rita Simonson, as owner of property in Pocatello, Idaho, signed an "earnest money agreement." This proposed sale did not close on the date scheduled. The next day James and Lois Gaved purchased the property from Simonson. The disappointed Woods brought this suit against Simonson and the Gaveds for specific enforcement of the earnest money agreement. The district court held that the earnest money agreement was an enforceable contract. The court also held that the Gaveds were not bona fide purchasers. The court, therefore, ordered specific performance of the Woods' earnest money agreement. The Gaveds and Simonson appealed. We affirm in part, vacate in part and remand.

There is one ultimate issue on appeal: did the district court err by ordering specific performance? The answer to this question, in turn, will be found by examining three subsumed questions: (1) was the earnest money agreement an enforceable contract? (2) did the Woods have an adequate remedy at law without specific performance? and (3) were the Gaveds bona fide purchasers? Because this case was decided by way of summary judgment, we must determine whether genuine issues of material fact exist on any of these questions. See I.R.C.P. 56(c).

The undisputed facts may be recited briefly. Simonson owned a house and acreage which she agreed to sell to the Woods. In September 1981, the Woods and Simonson signed an earnest money agreement covering the property. The agreement provided for a purchase price of $170,000,

terms of payment and earnest money of $1,000; it designated a closing agent, provided for the real estate agent's commission and allocated personal property; it also provided that the property would be sold "as is." The earnest money agreement was prepared by a real estate agent and signed by Simonson who made several changes in, and additions to, the agreement. The closing date was set for September 28. When Simonson signed the agreement, she indicated to the real estate agent that she considered $1,000 earnest money insufficient. She requested an additional $4,000. Nevertheless, she signed the agreement without changing the amount of earnest money provided therein. The Woods also signed the agreement later. Furthermore, they agreed to the extra earnest money on the condition that they receive a written assignment from Simonson of some claims for damage to the house resulting from a backed-up sewer. Thereafter, the Woods delivered a promissory note for $4,000 to the real estate agent and later, after Simonson had expressed dissatisfaction about the note, they delivered a check to the real estate agent. Simonson never received either the note or the check and the Woods never received a written assignment of the sewer claims.

It appears that neither the Woods nor Simonson were ready to close at the appointed time. A new closing date was subsequently set by Simonson through a letter to the Woods. Meanwhile, the Gaveds had become interested in purchasing the property and Simonson signed a second earnest money agreement with the Gaveds. This agreement was to become operative in the event the Woods failed to close. The Gaveds agreed to pay several thousand dollars more for the property than the Woods had agreed to pay.

On the rescheduled closing date, October 13, the Woods appeared at the office of the closing agent with a certified check in the required amount. They then proceeded to sign all of the closing documents. Simonson, however, never appeared. Instead, she went to her attorney's office and waited. Soon telephone communications were established between Simonson's attorney and the real estate agent, who was keeping the Woods company. Discussions regarding the sewer claims began anew; but again no agreement was reached. Simonson did not sign any closing documents and the parties went home. Later that evening Simonson informed the Gaveds she had not closed with the Woods and that if they wanted the property they could have it. She signed the necessary papers and the next day the sale to the Gaveds was closed.

The Woods brought suit, alleging Simonson had breached their earnest money agreement by refusing to close. They requested specific performance of the agreement, claiming that the Gaveds were not bona fide purchasers and were thus not entitled to protection even though the Gaveds had recorded their deed first. *See* I.C. § 55–812. All parties moved for summary judgment and the district court granted the Woods' motion. The Gaveds and Simonson appealed.

The first question we will examine is whether the Woods-Simonson earnest money agreement was an enforceable contract. To be enforceable, a contract must be complete and definite in all its material terms. *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 670 P.2d 51 (1983). Nor will an ambiguous earnest money agreement support an award of either specific performance or damages. *White v. Rehn*, 103 Idaho 1, 644 P.2d 323 (1982). Whether a contract is ambiguous is a question of law which may be determined by an appellate court. *Bennett v. Bliss*, 103 Idaho 358, 647 P.2d 814 (Ct.App.1982). Here, the earnest money agreement clearly set forth the names of the parties, the price to be paid, the terms of the payment, the name of the closing agent, a description of the property, that the property would be sold "as is," the amount of the earnest money required and which personal property was excluded from the sale. On its face then, this agreement appears to be unambiguous and complete in all its material terms.

■ Simonson and the Gaveds, however, argue that the agreement did not provide for the greater earnest money requested by Simonson nor did it indicate which party was to receive the sewer claims. Without these two items, they maintain, the agreement was incomplete and did not represent the parties' true intent. We recognize that our duty in contract disputes is to attempt to determine the parties' intent. However, where the language of a contract is clear and unambiguous, the meaning of that contract and the intent of the parties must be determined from the plain meaning of the contract's own words. *See Ryan v. Mountain States Helicopter, Inc.*, 107 Idaho 150, 686 P.2d 95 (Ct.App.1984). Since we have already held that the earnest money agreement was unambiguous on its face, we cannot look to extrinsic indicia of the parties' intent. The agreement being complete on its face, we hold as a matter of law it was enforceable.

■ We turn now to the question of whether the Woods had an adequate remedy at law. The specific focus in this case is whether the property was unique. Generally, courts presume that a party does not have an adequate remedy at law in land sales cases because a specific tract of land is considered unique. No amount of money, it is said, can compensate for the loss of an unique tract of land. *See Suchan v. Rutherford*, 90 Idaho 288, 410 P.2d 434 (1966). This presumption, however, can be overcome by a showing that the tract of land in a given case is *not* unique. *Id.* "Wide discretion is afforded the trial court to determine whether damages is an adequate remedy in contracts concerning sale of real property, and specific performance is never a matter of absolute right." *Woliansky v. Miller*, 135 Ariz. 444, 661 P.2d 1145, 1147 (Ct.App.1983).

■ Here, the district court recognized the presumption that land is unique, but the record does not show that he considered whether the facts presented in this case were sufficient to overcome that presumption. Simonson and the Gaveds point to the depositions of the real estate agent and Simonson herself to support their argument that the property was not unique. The real estate agent stated that there were other properties, with both house and acreage, listed at approximately the same price. Simonson stated that an appraisal done on her house used two similar houses for comparison. Of course, the existence of comparable properties for appraisal purposes is not, of itself, determinative of the question whether the Simonson property is unique. The real estate agent, in fact, pointed out the following additional features of this property in his deposition: (1) its location—within the city limits, next to a country club; and (2) its terrain—substantial amount of flat land which could be used as an arena to train and ride the Woods' Arabian show horses. The real estate agent stated there were no other comparable properties when considering these additional features. All parties moved for summary judgment, on undisputed, well-developed facts concerning the nature of the property. We believe that in these circumstances the trial court is in a position to determine whether appellants have met their burden to present facts sufficient to overcome the presumption that the property is unique. *Riverside Development Company v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). However, as we said in *Argyle v. Slemaker*, 107 Idaho 668, 671, 691 P.2d 1283, 1286 (Ct.App.1984) "when a judge exercises the *Ritchie* power, findings should be made. Otherwise, the reviewing court cannot identify the judge's choices of evidence or of inferences, in order to determine whether they were clearly erroneous."

The final question is whether the Gaveds were bona fide purchasers. "One who purchases or encumbrances with notice of inconsistent claims does not take in good faith, and one who fails to investigate the open or obvious inconsistent claim cannot take in good faith." *Langroise v. Becker*, 96 Idaho 218, 220, 526 P.2d 178, 180 (1974). In addition, "one who purchases property with sufficient knowledge to put him, or a

reasonably prudent person, on inquiry is not a bona fide purchaser." *Imig v. McDonald,* 77 Idaho 314, 318, 291 P.2d 852, 855 (1955). There can be no dispute that the Gaveds knew about the earnest money agreement between the Woods and Simonson. Simonson, however, also told the Gaveds that the sale to the Woods did not go through and that the deal was off. The Gaveds contend that, under these circumstances, they were under no duty to inquire further and were therefore bona fide purchasers. Indeed, this position has some support. *See Rogers v. Wiley,* 14 Ill. 65 (1852).

The district court, however, held that the Gaveds were not bona fide purchasers because "[o]ne cannot be a good faith purchaser when a reasonable investigation of the property would have revealed the existence of a conflicting agreement." The court cited *Langroise v. Becker,* 96 Idaho 218, 526 P.2d 178 (1974). This holding, of course, presupposes that the Gaveds had a *duty* to investigate, a supposition hotly denied by the Gaveds. Moreover, *Langroise* does not compel us to hold, as a matter of law, that Gaveds had a duty to look beyond the information given to them by Simonson. *Langroise* dealt with a situation where the party who claimed to be a bona fide holder of a recorded deed of trust took that deed of trust when the subject property was actually and visibly occupied by improvements erected by an adjoining property owner. The Court in *Langroise* quoted *Paurley v. Harris,* 75 Idaho 112, 117, 268 P.2d 351, 353 (1954), "[o]ne buying property *in the possession of a third party* is put upon notice of any claim of title or right of possession by such third party, which a reasonable investigation would reveal." *Langroise v. Becker,* 96 Idaho at 220, 526 P.2d 180 (emphasis added). The Court went on to say: "We believe that this is the appropriate rule in determining good faith under the recording act, i.e., that one cannot be a good faith purchaser or encumbrancer when a reasonable investigation *of the property* would have revealed the existence of the conflicting claim in question. *Id.* at 220–21, 526 P.2d at 180–81 (emphasis added). In the present case, of course, a "reasonable investigation *of the property*" would not have revealed the existence of the Woods' conflicting claim.

■ Clearly, without Simonson's statement regarding the failure to close with the Woods, the Gaveds would have had a duty to investigate because they had notice of a conflicting interest. But when Simonson's statement is added to the scenario, the result becomes less clear—the Gaveds then had notice that the conflicting interest no longer existed. The issue becomes whether a purchaser is at liberty to accept the vendor's statement that the prior rights of another person seeking to buy the property have been discharged or whether the purchaser should be required to investigate further. In other words, would a reasonably prudent person have been put on inquiry as to the vendor's right to convey title? This question naturally depends upon the particular facts of the case at hand. Because the record on appeal does not show that the district court considered the effect of Simonson's statement to the Gaveds, we must reverse for further findings. We make no intimation regarding the propriety of summary judgment on this question following further consideration. To aid the court on remand, we offer the following observations.

■ First, "[i]t is not sufficient that [a purchaser] make an inquiry of a person when he knows that it is to such person's interest to misrepresent or conceal the existence of an outstanding equity." 92 C.J.S. Vendor & Purchaser § 326 (1955). It is true, of course, that a vendor generally has no particular interest to misrepresent or conceal the existence of an outstanding equity. However, if facts appear which would cast suspicion upon the vendor in the eyes of the reasonably prudent person, the purchaser "does not discharge his duty [to investigate] by making inquiry of his vendor alone, and hence the fact that the purchaser is misled by the vendor's false statements is usually not sufficient to protect

him." *Id. But see Curtis v. Blair,* 26 Miss. 308, 327–28 (1853); *General Theatrical Enterprises, Inc. v. Lyris,* 131 S.W.2d 874 (Mo.Ct.App.1939); *Warren v. Clark,* 24 S.W. 1105 (Tex.Civ.App.1894).

Here, Simonson told the Gaveds that the transaction did not close on September 28 because neither she nor the Woods were prepared to close. On October 13, Simonson again told the Gaveds the sale did not close. However, if the failure to close was due to Simonson's negligence or wrongful conduct, the Woods could still have had an interest in the property. Simonson also mentioned to the Gaveds that her need to close immediately was based on the fact that she had a financial obligation which was coming due. The question is whether a reasonably prudent person would have suspected Simonson had an interest to misrepresent or conceal the existence of the Woods' outstanding equity. In other words, would a reasonably prudent person have investigated further to determine whether the vendor was concealing an outstanding interest? These are questions for the district court on remand.

The judgment of the district court is affirmed insofar as it held the earnest money agreement was enforceable, but vacated in regard to the court's holding that the property was unique and that the Gaveds were not bona fide purchasers. The cause is remanded for reconsideration of these issues in light of this opinion. Costs to appellants, Gaveds. No attorney fees on appeal.

WALTERS, C.J., concurs.

BURNETT, Judge, concurring specially.

I join in the Court's opinion with the understanding that it imposes no broad duty upon a purchaser to obtain independent corroboration of a seller's right to convey property. The purchaser ordinarily is entitled to rely upon the seller's representation. The duty to conduct an independent investigation arises only if the purchaser is apprised of facts that would put a reasonably prudent person on inquiry.