NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EIDAN AZULY, *Plaintiff/CounterDefendant/Appellant*,

*v.*

C-BACK ENTERPRISES, LLC[1], *Defendant/CounterClaimant/Appellee*.

No. 1 CA-CV 24-0936

FILED 10-02-2025

Appeal from the Superior Court in Maricopa County
No. CV2021-008737
The Honorable Joan M. Sinclair, Judge

**VACATED AND REMANDED**

COUNSEL

Parker Daniels Kibort LLC, Minneapolis, MN
By Abraham Kaplan, Andrew D. Parker
*Counsel for Plaintiff/CounterDefendant/Appellant*

The Real Estate Investor Law Firm, LLC, Mesa, AZ
By Joseph G. Urtuzuastegui, Blake D. Gunn
*Counsel for Defendant/CounterClaimant/Appellee*

---

[1] On the Court's motion, we amend the caption above to reflect Appellee's correct name, and order that the amended caption be used on all future filings.

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

**¶1**        Eidan Azuly signed a contract to buy a house in Phoenix (the "House") from C-Back Enterprises, LLC ("C-Back"). Shortly before escrow closed, C-Back issued a notice of default and, four days later, canceled the sale. Azuly sued C-Back and recorded a *lis pendens* against the House. The superior court granted summary judgment for C-Back on all of Azuly's claims; he now appeals. We vacate summary judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

**¶2**        We view the evidence in the requisite light most favorable to Azuly as the party against whom summary judgment was entered. *See Doe v. Roman Cath. Church of Diocese of Phoenix*, 255 Ariz. 483, 486, ¶ 2 (App. 2023) (citation omitted).

**¶3**        In April 2021, Azuly entered into a real estate purchase contract agreement (the "Agreement") to buy the House from C-Back for $930,000. Therese Koch was the owner and sole member of C-Back.

**¶4**        The Agreement required the parties to "comply with all terms and conditions[,] . . . execute and deliver . . . all closing documents, and perform all other acts necessary in sufficient time to allow" escrow to close on May 14, 2021. It further provided that the sale was contingent upon Azuly obtaining loan approval without Prior to Document ("PTD") conditions no later than three days before close of escrow ("COE"). Section 2(b) of the Agreement further contained the following provision:

> Loan Contingency: Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval without [PTD Conditions] no later than three (3) days prior to the COE Date for the loan described in the AAR Loan Status Update . . . form or the AAR Pre-Qualification Form, whichever is delivered later. *No later than three (3) days prior to the COE Date, Buyer shall either*: (i) sign all loan documents; or (ii) *deliver to Seller or*

*Escrow Company notice of loan approval without PTD conditions AND date(s) of receipt of Closing Disclosure(s) from Lender*; or (iii) deliver to Seller or Escrow Company notice of inability to obtain loan approval without PTD conditions (emphasis added).

¶5          Section 7(a) of the Agreement set forth the following "cure period" provision:

Cure Period: A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become a breach of Contract.

¶6          Section 7(b) of the Agreement provided that, "[i]n the event of a breach of Contract, the non-breaching party may cancel this Contract[.]" Section 7(b) further provided in part:

The parties expressly agree that the failure of any party to comply with the terms and conditions of Section 1d to allow COE to occur on the COE date, if not cured after a cure notice is delivered pursuant to Section 7a, will constitute a material breach of this Contract, rendering the Contract subject to cancellation.

¶7          By May 12, 2021 — three days before the scheduled COE — Azuly had not yet satisfied any of Section 2(b)'s alternative requirements: he had not (1) signed any loan documents, (2) delivered notice of loan approval without PTD conditions and the date of receipt of closing disclosures, or (3) delivered notice of inability to obtain loan approval without PTD conditions. That day, Koch issued a cure notice on behalf of C-Back.

¶8          Azuly responded the next day, explaining that his lender needed more time to prepare the proper documentation. Azuly followed up with another email asking her to sign an addendum to the Agreement to "extend the closing for 1 week." He attached to this email a document from his lender, Angel Oaks Mortgage Solutions ("Angel Oaks"), entitled "Conditional Underwriting Approval[.]" The conditional underwriting approval listed various "closing conditions," one of which provided that if

COE did not take place as scheduled on May 14, 2021, "all parties must fully execute an extension at/prior to closing."

¶9            On May 14, Koch replied that she was not willing to extend the COE date.

¶10          Later that day, Azuly sent Koch an email to which he attached a forwarded email from Angel Oaks reading in part, "Borrower [Azuly] has been cleared to close!" Describing the attachment as "notification from the lender giving us the clear to close," Azuly stated that he had "already e-signed the closing disclosures sent by the lender." "This is curing the breach," Azuly stated, asking that an appointment be scheduled "to sign the closing docs."

¶11          The following morning, Azuly's broker, Michael Becker, emailed Koch to reiterate that Azuly was "clear to close[.]" Becker attached to his email a Loan Status Update ("LSU") with a checklist indicating the status of the loan. The box marked "yes" was checked next to the checklist item reading "Buyer has loan approval without PTD Conditions[.]"

¶12          The following day, May 16, Koch sent Azuly an email with a subject line reading "SELLER CANCELLATION OF CONTRACT" in which Koch stated in part that the breach identified in the "Cure Notice from Seller dated 5/12/21 remains uncured" and the "(3) day cure period has lapsed as of 5/16/21[.]"

¶13          Azuly filed suit against C-Back, asserting claims for specific performance, breach of contract, and breach of the implied covenant of good faith and fair dealing."[2] Azuly also recorded a *lis pendens* against the House.

¶14          After a hearing, the court ordered the *lis pendens* released. Azuly filed an amended complaint in which he dropped the request for specific performance. C-Back subsequently filed a motion for summary judgment on all of Azuly's claims, as well as its own counterclaim for damages resulting from the *lis pendens*.

¶15          The superior court initially denied C-Back's motion for summary judgment. C-Back filed a motion for reconsideration to which it attached the document entitled "Conditional Underwriting Approval" that

---

[2] Azuly later amended his complaint to assert a claim against Koch's employing broker. The court granted summary judgment against Azuly on that claim. That claim is not at issue in this appeal.

Azuly forwarded to C-Back with his May 14 email. The conditional underwriting approval did not satisfy Section 2(b), C-Back asserted, because Section 2(b) purportedly required "notice of *unconditional* loan approval (emphasis added)."

**¶16** After further briefing, the superior court reversed its prior denial of C-Back's motion for summary judgment. Noting that Azuly did not dispute that he breached the Agreement and was required to cure the breach within three days, the court held that Azuly "has not provided sufficient factual support demonstrating that he cured the breach within the three-day time frame." In apparent reference to the conditional loan approval, the court observed that the evidence "does not demonstrate that [Azuly] obtained loan approval without PTD conditions at any time." The court therefore granted summary judgment and assessed Azuly $5,000 for wrongfully recording the *lis pendens*. *See* A.R.S. § 33-420(A).

**¶17** Azuly then filed his own motion for reconsideration, which the superior court denied. Azuly timely appealed the superior court's grant of summary judgment for C-Back. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶18** Azuly challenges the court's ruling granting C-Back's motion for summary judgment, asserting that he controverted C-Back's motion with evidence sufficient to create an issue of fact about whether he cured the default identified in C-Back's cure notice.

**¶19** Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Summary judgment is not appropriate merely because the court believes that the movant will win, or should win, at trial. *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990). We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Doe*, 255 Ariz. at 488, ¶ 18.

**¶20** In finding that Azuly failed to present evidence to establish that he cured the breach by notifying C-Back that he received loan approval without PTD conditions, the court acknowledged that he sent Koch an email on May 14 claiming to have "cur[ed] the breach" and forwarding the "clear to close" email from Angel Oaks. The court nonetheless found that the exhibits Azuly submitted with his response to C-Back's motion failed to support the claim in his May 14 email that he cured the breach. The court

proceeded to identify and discuss Exhibits A through L that were attached to Azuly's response. The court noted, for example, that Exhibit L, the May 15 email from Becker, confirmed that Azuly was "clear to close" and attached an updated LSU. The court also observed, however, that "[n]one of these documents purport to be from the lender, Angel Oak." According to the court, "the only document from the lender specifically, the conditional underwriting approval updated on May 13, 2021, does not meet the requirements of Section 2b of the [Agreement] noted above." Making no mention of Exhibits M through O, the court concluded that Azuly "has not provided sufficient factual support demonstrating that he cured the breach within the three-day timeframe."

¶21 For several reasons, we conclude that the court erred in determining that Azuly failed to present evidence sufficient to withstand summary judgment.

¶22 First, the record does not support the court's evident conclusion that neither Azuly's May 14 email nor Becker's May 15 email satisfied Section 2(d)'s requirement that Azuly give "notice of loan approval without PTD conditions." Although neither email expressly referenced PTD conditions, both emails stated that the loan was "clear to close." Viewed in the light most favorable to Azuly as the non-moving party, and giving him the benefit of all reasonable inferences therefrom, *see Doe*, 255 Ariz. at 488, ¶ 18, the two emails could reasonably be read to mean that the loan status met the Agreement's requirements. Indeed, Azuly's May 14 email expressly stated that the breach that was the subject of C-Back's May 12 notice had been "cur[ed]."

¶23 The court's observation that Azuly provided only one exhibit that came "from the lender specifically" suggests that the court believed only a document directly from the lender could satisfy Section 2(b)'s "notice" requirement. But Section 2(b) does not require that the notice come from the lender itself. Further, Section 2(b) does not require that the requisite notice be in any particular form, or include any particular language. Nothing in Section 2(b), therefore, supports a finding that an email from Azuly or his broker could not constitute the requisite notice. By concluding that neither Azuly's May 14 email nor Becker's May 15 email satisfied Section 2(b), the court erroneously read non-existent requirements into Section 2(b). *See Employers Mut. Cas. Co. v. DGG & CAR, Inc*., 218 Ariz. 262, 267, ¶ 24 (2008) ("When the provisions of the contract are plain and unambiguous on their face, they must be applied as written, and the court will not . . . add something to the contract which the parties have not put there." (citations omitted)). At a minimum, Azuly's May 14 email and

Becker's May 15 email create an issue of fact concerning whether Azuly had cured the breach, rendering summary judgment improper.

¶24            Second, the court's ruling granting summary judgment makes no reference to three of the fifteen exhibits that Azuly submitted along with his response to C-Back's motion. Although a reviewing court generally presumes that the trial court considered all relevant evidence, *see Byars v. Ariz. Pub. Service Co.*, 24 Ariz. App. 420, 425 (App. 1975), that presumption cannot hold when, as here, the trial court expressly lists the evidence it considered, and the court's list leaves some evidence out.

¶25            Of the exhibits that the court evidently overlooked, Exhibit M, the report of Azuly's expert, is particularly significant.[3] The expert's report contained an excerpt from the LSU reflecting that the loan approval was free of PTD conditions. In her report, Azuly's expert opined that the LSU "indicated that [Azuly] had received full loan approval and had signed the Closing Disclosure." The expert's opinion establishes a genuine dispute as to whether Azuly obtained the required loan approval without PTD conditions.

¶26            In its answering brief, C-Back asserts that the expert report constitutes inadmissible hearsay that could not defeat its motion for summary judgment. C-Back never raised this objection, however, in the court below. Although, in its reply in support of its motion, C-Back referred in passing to the expert report as a "hearsay report," C-Back never moved to strike the expert report or otherwise objected to it in the superior court. C-Back therefore waived its evidentiary objections to Exhibit M. *Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 112, ¶ 26 (App. 2007) (holding that, by failing to move to strike or otherwise object to declarations plaintiff submitted in response to defendant's motion for summary

---

[3] At oral argument, C-Back's counsel faulted Azuly for failing to call the court's attention to Exhibit M during the summary judgment proceedings. C-Back is correct, of course, that a trial court is not required to "search[] the record to attempt to discover facts which establish or defeat the motion[,]" *Mast v. Standard Oil Co. of Calif.*, 140 Ariz. 1, 2 (1984), and the party opposing summary judgment has the obligation to "call the court's attention to evidence" in the record that supports its position. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008). Contrary to C-Back's assertion, however, Azuly discharged that obligation here by discussing his expert's report in his response to C-Back's motion for summary judgment and his statement of disputed facts.

judgment, defendant waived argument that declarations "contain inadmissible evidence").

¶27        In stating, when granting summary judgment, that the evidence "does not demonstrate that [Azuly] obtained loan approval without PTD conditions at any time," the court appears to have accepted C-Back's argument that the word "conditional" in the title to the conditional loan approval establishes that Azuly did not satisfy Section 2(b). But Section 2(b) required only that Azuly provide notice of loan approval free from *PTD* conditions, not free of *all* conditions. As Azuly points out (and C-Back conceded at oral argument), not all conditions are PTD Conditions. The conditional underwriting approval that C-Back submitted did not make clear whether the conditions set forth therein were PTD or non-PTD conditions. In the absence of any such indication, no basis existed to conclude that the conditional loan approval failed to satisfy Section 2(b).

¶28        At oral argument, C-Back insisted that the conditional loan approval could not properly be considered because it was not supported by affidavit as required by Rule 56 and because it was submitted in support of a motion for reconsideration. This argument is puzzling to say the least, since it was C-Back itself that submitted the conditional loan approval in connection with its own motion for reconsideration. It hardly needs to be said that a party that submits exhibits to support its request for summary judgment cannot later assert evidentiary objections to its own exhibits. *See State v. Robertson*, 249 Ariz. 256, 260, ¶ 15 (2020) ("The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal." (citation modified)). And although, as C-Back correctly noted, "[t]he superior court was not required to accept and examine evidence presented to it for the first time in connection with [a] motion for reconsideration," *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 17 (App. 2009), that principle is irrelevant here because the superior court did, in fact, accept and consider the conditional loan approval. Because the court did in fact rely in part on the conditional loan approval in granting summary judgment, we are not precluded from considering on appeal whether the court correctly interpreted that document. *Korwin v. Cotton*, 234 Ariz. 549, 554, ¶ 8 (App. 2014) (noting that appellate court "review[s] the grant of summary judgment on the basis of the record made in the trial court.").

¶29        Because the evidence presented in support of and opposition to C-Back's motion for summary judgment establishes a factual dispute about whether Azuly satisfied Section 2(b) by providing timely notice that

he had obtained loan approval without PTD conditions, the court erred in granting summary judgment in C-Back's favor on his claims.

¶30 Azuly also argues that the court erred in imposing sanctions for his recording of a *lis pendens*. He argues that because he believed he had cured the breach identified in C-Back's cure notice, he believed that he was entitled to purchase the House and therefore neither knew nor should have known that the *lis pendens* was groundless.

¶31 Because Azuly's claim was to enforce a contract for the sale of real property, specific performance was available as a remedy. *Wolianksy v. Miller*, 135 Ariz. 444, 447 (App. 1983). In the original complaint he filed when he recorded the *lis pendens*, Azuly did in fact assert a claim for specific performance. The assertion of a viable claim for specific performance may justify the recording of a *lis pendens*. *See Evergreen West, Inc. v. Boyd*, 167 Ariz. 614, 618–19 (App. 1991) ("The need for [a *lis pendens*] is evident in an action for specific performance"). Recording a *lis pendens* is sanctionable only if the recorder "know[s] or [has] reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid[.]" A.R.S. § 33-420(A). A *lis pendens* is groundless only when there is no arguable basis or evidence showing that the underlying claim is one affecting title to real property. *See Boyd*, 167 Ariz. at 619.

¶32 Azuly's claim for specific performance gave him an arguable claim to title to the House. *Id.* ("[A] complaint seeking specific performance . . . is clearly an action affecting title to real property."). The record does not indicate when C-Back sold the House to the third party, or when Azuly knew or should have known that C-Back no longer owned it. The record does not, therefore, support a finding that Azuly knew or should have known that the *lis pendens* was groundless when he recorded it, or that he improperly refused to release it after learning that the House had been sold. We vacate the award of statutory damages and fees related to the *lis pendens* proceedings.

## CONCLUSION

**¶33**      We vacate the order granting summary judgment and statutory sanctions and remand to the superior court for further proceedings consistent with this decision.

