723 P.2d 190

**INSURANCE ASSOCIATES CORPORA-
TION, an Idaho corporation,
Plaintiff-Appellant,**

v.

**Craig HANSEN and Jess W. Swan Insur-
ance Agency, Inc.,
Defendants-Respondents.**

**No. 16020.**

Court of Appeals of Idaho.

July 30, 1986.

Rehearing Denied Aug. 28, 1986.

Joseph M. Coughlan, Coughlan, Cough-
lan & Korn, Boise, for plaintiff-appellant.

Jeffrey M. Wilson, Matthews, Wilson and
Carnahan, Ctd., Boise, for defendants-re-
spondents.

WALTERS, Chief Judge.

Insurance Associates Corporation filed
suit against Craig Hansen and Jess W.
Swan Insurance Agency, Inc., seeking dam-
ages for the alleged breach by Hansen of a
covenant not to compete in a written em-
ployment agreement between Insurance
Associates and Hansen. After a bench tri-
al, the district court entered judgment in
favor of the defendants, holding that Han-
sen did not breach the agreement. Insur-
ance Associates appeals. We reverse.

Insurance Associates designates the fol-
lowing as issues on appeal. Are the trial
court's findings of fact and conclusions of
law erroneous and not supported by the
evidence? Did the trial court err in failing
to ascertain and consider the intent of the
parties to the employment agreement?
Did the trial court err in its interpretation
of the agreement? Did the trial court err
in failing to find that the defendants solic-
ited and acquired customers of Insurance
Associates, in violation of the defendants'
common-law duty, the employment contract
and the Idaho Trade Secrets Act (I.C.
§§ 48–801 through 48–807)? Is Insurance
Associates entitled to punitive damages?
And finally, is Insurance Associates enti-
tled to attorney fees on appeal?

Additionally, but not by way of cross-ap-
peal, the defendants contend the employ-
ment agreement lacked consideration.
They also claim entitlement to an award of
attorney fees on appeal.

From our review of the record in this
case, we conclude that the findings of fact

made by the district court are supported by the evidence, are not clearly erroneous and should not be set aside. I.R.C.P. 52(a). However, we believe the district court erred in its interpretation of the agreement between Insurance Associates and Hansen, thereby arriving at an erroneous legal conclusion that Hansen had not breached the agreement.

The district court found that Hansen became employed as an insurance salesman by Insurance Associates in June, 1980. On February 2, 1982, Hansen and Insurance Associates entered into a written employment agreement. On October 6, 1982, Hansen was fired by Insurance Associates and within ten days became employed by the defendant Jess Swan Insurance Agency, a competitor of Insurance Associates. Thereafter, twenty-two customers who had purchased insurance from Hansen while he was employed by Insurance Associates transferred their business to the Swan Agency. Alleging violation of the employment agreement, Insurance Associates filed suit to collect damages equivalent to one year's commission or fee for each of the accounts, pursuant to a provision in the agreement.

Hansen's agreement with Insurance Associates prohibited Hansen from soliciting insurance business from any customers of Insurance Associates with whom Hansen had business or personal relations during the term of the written agreement, for a period of two years following termination of his employment. The duration of the agreement was indefinite—by its terms the agreement could be cancelled by either Hansen or Insurance Associates upon fifteen days notice to the other party.[1] The agreement also precluded Hansen from using, without the written consent of Insurance Associates, any confidential information relating to customers or accounts of Insurance Associates—such as names of customers; policy expiration dates; policy terms, conditions and rates; familiarity with customers' risk characteristics; and information concerning the insurance markets for large or unusual commercial risks.

After considering the provisions in the employment contract, the district court concluded that the agreement did not limit Hansen's right to deal with customers and use information he had developed prior to execution of the contract, but only that he would not engage in competitive practices as to the use of customer information acquired by Insurance Associates following the execution of the agreement. The court then analyzed the history of each of the twenty-two accounts in question. The court found the evidence insufficient to establish the history or status of two of the accounts. The court held that each of the remaining twenty accounts was developed as a result of Hansen's efforts which had begun, and from information which he had obtained, before February 2, 1982, the date of the employment agreement. The court therefore held for the defendants, determining there was no liability resulting from the transfer of the twenty-two customers to the Swan Agency.

■ Before turning to the particular provisions of the contract which are in issue, we shall dispose of the defendants' threshold argument that the written employment agreement lacked consideration. The district court disagreed with that contention at trial. On appeal, the defendants continue to assert that, in exchange for his covenant not to compete following termination of his employment, Hansen did not receive anything he did not already have before the agreement was entered into with Insurance Associates. We agree with the district court that there was consideration for the agreement. The court found, from the evidence, that if Hansen had not signed the agreement, his employment would have been terminated by Insurance Associates. The court also found that, upon executing the agreement, Hansen did keep his job "for an additional eight or nine months." Under these circumstances we hold the

---

1. Although not addressed in the agreement, the district court found, based on testimony at trial, that Hansen was an employee at will and could be fired at any time by Insurance Associates.

agreement was supported by consideration. *See* Annot., 51 A.L.R.3d 825, § 4[b] (1973).

■ We now turn to the merits of the appeal. In contract disputes, it is the duty of the court to attempt to determine the parties' intent. *Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319 (Ct.App.1985). It is axiomatic that, in order to ascertain the intention of the parties to a contract, the first resort is to the contract itself, which is dispositive if complete and unambiguous. The contract must be construed as a whole and considered in its entirety. *Canyon View Irrigation Co. v. Twin Falls Canal Co.,* 101 Idaho 604, 619 P.2d 122, *cert. denied,* 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981). Moreover, a contract must be construed so as to give effect to every part of it, if at all possible. *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984). Here, the employment agreement contained a number of interrelated provisions. It commenced with a recital that:

> Insurance Associates Corporation is the owner of the Insurance Associates Corporation business relating to the Customers as these terms are used below, and that these customers comprise a substantial part of the good will of Insurance Associates. To protect the business and good will of Insurance Associates and the confidential information belonging to Insurance Associates, the parties have agreed to a limited period of noncompetition and to nondisclosure of confidential information following termination of employment. Such limitations relate solely to Insurance Associates Corporation business and customers, however, and are intended to permit Employee to remain in the insurance and brokerage business, if he so desires.

The agreement next provided (paragraph 1) for payment of compensation to Hansen as the parties may agree upon, from time to time. Paragraph 2 required Hansen to devote his entire business time to the Insurance Associates enterprise and to perform his assigned work faithfully. The agreement then provided:

> 3. Insurance Associates Business—All business and fees including insurance, bond, risk management, self-insurance and other services (collectively, the "Insurance Associates Business"), produced or transacted through the efforts of Employee shall be the sole property of Insurance Associates Corporation. Employee shall have no right to share in any commission or fee resulting from the conduct of such business other than as compensation referred to in paragraph 1.

The agreement further declared that all premiums, commissions or fees collected from customers belonged to Insurance Associates (paragraph 4). Next, paragraph 5 of the contract recognized that "in the course of his employment hereunder, [Hansen] will become acquainted with confidential information belonging to Insurance Associates." That paragraph prohibited Hansen from using any confidential information—relating to persons, firms and corporations "which are or become" customers or accounts of Insurance Associates—without the written consent of Insurance Associates, except as may be required in the course of his employment with Insurance Associates. The contract also recited (paragraph 6) that all records, files, manuals, lists of customers, blanks, forms, materials, supplies, and computer programs furnished to Hansen belonged to Insurance Associates and upon termination of Hansen's employment would be delivered to Insurance Associates.

The contract's covenant not to compete recited:

> 7. Noncompetition for Certain Customers—Upon termination of employment hereunder, Employee agrees that for a period of two years following such termination he will not, without the written consent of Insurance Associates Corporation, directly or indirectly, solicit or accept insurance or bond business from, or perform any of the services included within the Insurance Associates business for any Insurance Associates customer with whom he has had business or per-

sonal relations during the term of this Agreement.

Additionally, Hansen agreed (paragraph 8) not to organize or plan any business activity competitive with his employment at Insurance Associates, or, for a two-year period following termination of his employment with Insurance Associates, not to solicit any of Insurance Associates' employees to work for him or for any competitor.

Paragraph 9 provided for recovery by Insurance Associates of damages for breach of the agreement by Hansen. That clause recited:

> 9. Certain Commissions and Fees—If any commission or fee becomes payable to Employee or to any person, firm or corporation by whom Employee is then employed as a result of violation by Employee of the provisions of paragraphs 5, 6, 7, or 8 of this Agreement, Employee agrees to pay, or to cause his new employer to pay, promptly to Insurance Associates Corporation[,] an amount equal to the first year commission or fee.

The agreement contained other provisions not pertinent to the issues before us.

As noted, the district court focused on paragraph 5 of the agreement, determining that the agreement was prospective only (following the date of its execution) because the agreement provided that Hansen was prohibited from using confidential information that "he will become acquainted with...." The court concluded that the agreement did not limit Hansen's right to use information he had already acquired prior to the execution of the agreement. Therefore, because the accounts in question resulted from Hansen's efforts which had begun, and from information which had been acquired, before the agreement was signed, the court held that Hansen did not violate the employment contract by servicing and renewing the accounts after the accounts were transferred to the Swan Agency.

In our view, the district court erroneously focused solely on the "confidential information" provision in the employment agreement. As noted, paragraph 3 of the agreement, as well as defining the nature of Insurance Associates' business, states that "All business ... produced or transacted through the efforts of [Hansen] shall be the sole property of Insurance Associates Corporation." Thus, any contacts developed as customers following the date of the agreement belonged to Insurance Associates, regardless of whether Hansen had communicated with or had information relating to the customer prior to the execution of the agreement. The noncompetition covenant, paragraph 7 of the agreement, provided that—for a period of two years following termination of his employment with Insurance Associates—Hansen would not solicit or accept insurance business "from ... any Insurance Associates customer with whom he has had business or personal relations during the term of this Agreement." Therefore, the transfer of any such account through solicitation or acceptance by Hansen, within two years from the termination of Hansen's employment with Insurance Associates, rendered Hansen liable for an amount equal to the first year's commission or fee relating to such account following its transfer, under paragraph 9 of the agreement.

Our determination in this regard is limited only to those contacts who were or who became actual customers of Insurance Associates during the term of Hansen's employment with Insurance Associates. Hansen was prohibited only from soliciting "customers," not all persons with whom he previously may have communicated. Thus, if Hansen contacted a prospective customer prior to or during his employment with Insurance Associates, but that prospective customer did not become an actual customer while Hansen was working for Insurance Associates, then there would be no breach of the Insurance Associates' employment contract (and no damages awardable) as to that account.

Because the district court held that Hansen was not in breach of the agreement, the court made no findings as to the amount for which Hansen or the Swan Agency should be liable if the contract had

been breached, although evidence relating to the amount of recovery sought by Insurance Associates was admitted at trial. We reverse the court's determination that Hansen did not breach the agreement, and we remand to the district court for a finding as to the amount recoverable by Insurance Associates as damages.

Inasmuch as Insurance Associates is entitled to relief on its theory of breach of contract we need not discuss whether Insurance Associates might also have any right to recover for breach of a common-law duty or for violation of the Idaho Trade Secrets Act. Also, we express no opinion on Insurance Associates' claim for punitive damages. Our Supreme Court has held that "an award for exemplary damages should be left first to the determination of the trier of the fact." *Cheney v. Palos Verdes Investment Corporation*, 104 Idaho 897, 904, 665 P.2d 661, 668 (1983). On remand, the district court is free to decide whether—and, if so, in what amount—punitive damages should be awarded in this case.

Because we believe this appeal was neither brought, pursued or defended frivolously, unreasonably or without foundation, we decline to award attorney fees on appeal to either party. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Costs to appellant, Insurance Associates Corporation. Case remanded for further proceedings consistent with this opinion.

BURNETT and SWANSTROM, JJ., concur.

## ON PETITION FOR REHEARING

By petition for rehearing, the defendant-respondent Jess W. Swan Insurance Agency, Inc. requests that we clarify whether the judgment of the trial court is reversed as to both defendants or only as to the defendant Hansen. Alternatively, Swan asks that we indicate what additional proceedings are necessary in order to determine the responsibility of the Swan Agency for any portion of the appellant's damages.

We hold that the judgment is reversed as to both defendants. Further, on remand, the district court shall determine the respective liability of each defendant for any damages recoverable by Insurance Associates, upon the theories advanced by the parties.