782 P.2d 1230

**INSURANCE ASSOCIATES CORPORA-TION, an Idaho corporation,
Plaintiff-appellant,**

v.

**Craig HANSEN and Jess W. Swan Insurance Agency, Inc.,
Defendants-respondents.**

No. 17106.

Supreme Court of Idaho.

Nov. 15, 1989.

Coughlan & Coughlan, Boise, for plaintiff-appellant. Joseph Coughlan argued.

Wilson & Carnahan, Boise, for defendants-respondents Swan. Jeffrey M. Wilson argued.

Craig Hansen, pro se, did not appear.

BAKES, Chief Justice.

Plaintiff/appellant sued defendants/respondents for, *inter alia*, breach of the non-competition provision of an employment contract between appellant and respondent Hansen. After a bench trial, the trial judge held that the defendant Hansen had not breached the non-competition agreement, and judgment was entered for respondents. On appeal the Idaho Court of Appeals concluded that Hansen had indeed breached his employment contract; accordingly, the district court was reversed and the cause remanded so that the respective liability of each defendant could be determined on the theories advanced by the parties. On remand, the district court determined that only respondent Hansen was responsible for the breach and that damages and costs were likewise recoverable from him only. Plaintiff appellant again appeals. We affirm.

I

Defendant/respondent Craig Hansen became employed as an insurance salesman by Insurance Associates Corporation (IAC) on June 1, 1980. On February 2, 1982, Hansen and IAC entered into the written employment agreement which forms the basis for this action. The agreement contained a two-year non-competition provision and Hansen had to sign the agreement or be terminated. On October 6, 1982, IAC fired Hansen for matters unrelated to the employment agreement. Within ten days Hansen became employed by defendant/respondent Jess W. Swan Insurance Agency, Inc. (Swan), a competitor of IAC. Toward the end of October, 1982, Swan was provided a copy of the IAC/Hansen employment agreement. IAC's legal counsel wrote Swan inquiring as to Swan's willingness to honor the agreement's provisions which limited Hansen's right to contact former insurance customers. After consultation with its counsel, Swan decided that the agreement applied only to contacts who became customers of IAC subsequent to the date of the agreement, February 2, 1982. Thereafter, twenty-two customers who had purchased insurance from Hansen while he was employed by IAC transferred their business to Swan. Alleging violation of the employment agreement, and pursuant to the agreement's provisions, IAC filed suit to collect damages equivalent to one year's commission for each of the customers' accounts.

Hansen's agreement with IAC prohibited him from soliciting, for a period of two years following termination of his employment, any IAC customers with whom he had business or personal relations during the term of the written agreement. The term of the agreement was not specified, but certain of its provisions could be cancelled by either party upon 15 days' written notice to the other party. Accordingly, the district court found that Hansen was an employee at will, subject to termination at any time. The agreement also precluded Hansen from using, without the written consent of IAC, any confidential information relating to IAC customers or accounts.

After considering the provisions in the employment contract, the district court concluded that the agreement did not limit Hansen's right to deal with customers and use information he had developed prior to execution of the contract, but only that he could not engage in competitive practices involving the use of consumer information acquired by IAC following the execution of the agreement. The district court then analyzed the history of each of the twenty-two accounts in question. The evidence was insufficient to establish the history of two accounts, but the court held that each of the remaining twenty accounts was developed as a result of Hansen's efforts before February 2, 1982, the date of execution of the employment agreement. Further, regarding IAC's claim under the Idaho Trade Secrets Act, I.C. § 48–801 et seq., the court found that "the evidence does not establish that Mr. Hansen or the Jess Swan Agency used any trade secrets." The district court therefore held for the defendants Hansen and Swan and determined there was no liability resulting from the solicitation of the twenty-two customers by Hansen while working for Swan.

On appeal, the Idaho Court of Appeals reversed, concluding that Hansen had indeed breached his employment contract. The case was remanded to the trial court for a finding regarding the amount recoverable by IAC as damages. Then, on petition for rehearing, the Court of Appeals expanded its earlier directive by instructing the trial court to "determine the respective liability of each defendant for any damages recoverable by Insurance Associates, upon the theories advanced by the parties." *Insurance Associates Corp. v. Hansen,* 111 Idaho 206, 210, 723 P.2d 190, 194 (Ct.App. 1986) (*Hansen I*). The Court of Appeals further (1) "conclude[d] that the findings of fact made by the district court are supported by the evidence, are not clearly erroneous and should not be set aside," *id.* at 206–207, 723 P.2d at 194-195; (2) "[held] the agreement was supported by consideration," *id.* at 207–208, 723 P.2d at 195–196; and (3) declined to award attorney fees on appeal to either party.

On January 7, 1987, IAC moved for entry of judgment in accordance with the Court of Appeals decision. Hearing was held on IAC's motion and the court filed an opinion dated February 20, 1987, directing the parties to submit additional authorities and arguments in writing. Subsequently, on July 23, 1987, the trial court filed its memorandum opinion and order dismissing IAC's claim against Swan, but granting IAC's claim against Hansen in the principal amount of $34,956.67. On August 6, 1987, the trial court entered judgment dismissing IAC's claim against Swan and awarding IAC judgment against Hansen in the principal sum of $34,956.67 together with IAC's costs and attorney fees for a total judgment of $49,522.12. IAC now appeals from the trial court's judgment.

## II

IAC first contends that the trial court's findings of fact, as contained in its original decision filed March 22, 1985, are erroneous and not supported by the evidence. However, IAC is precluded from raising that issue. Before remanding the case back to the trial court, the Court of Appeals expressly "conclude[d] that the findings of fact made by the district court are supported by the evidence, are not clearly erroneous and should not be set aside. I.R.C.P. 52(a)." 111 Idaho at 206–207, 723 P.2d at 190–191. Accordingly, the facts having been decided, they are final, they have become the law of the case, and the Court of Appeals' pronouncement must

be adhered to, both in the trial court and on subsequent appeal. *Airstream, Inc. v. CIT Financial Services, Inc.,* 115 Idaho 569, 768 P.2d 1302 (1988); *Matter of Barker,* 110 Idaho 871, 719 P.2d 1131 (1986); *Suitts v. First Security Bank of Idaho,* 110 Idaho 15, 713 P.2d 1374 (1985).

## III

■ IAC next contends that the amount of the trial court's judgment against Hansen is incorrect. We disagree. The judgment was based upon the wording of the employment agreement which provides:

9. Certain Commissions and Fees—If any commission or fee becomes payable to Employee or to any person, firm or corporation by whom Employee is then employed as a result of violation by Employee of the provisions of paragraphs 5, 6, 7, or 8 of this Agreement, Employee agrees to pay, or to cause his new employer to pay, promptly to Insurance Associates Corporation[,] an amount equal to the first year commission or fee.

Hansen and IAC agreed that should any commission become payable to Hansen as a result of Hansen's violation of the agreement, then Hansen was to pay that commission over to IAC. The commissions and fees payable to Hansen as a result of his breach of the employment agreement were supplied to IAC by Swan and were introduced into evidence via Plaintiff's Exhibits 7 and 8. They total $34,956.67, which is the same amount as that awarded by the trial court.

On appeal, IAC contends that the total commission amount reflected in Plaintiff's Exhibit No. 6 should be the judgment amount. That figure is $43,073.86. Appellant's contention, however, disregards the express wording of the Hansen/IAC employment agreement. Paragraph 9 of the agreement provides for payment of "any commission or fee [which] becomes payable to [Hansen]." Paragraph 9 anticipates future commissions. Plaintiff's Exhibit No. 6, conversely, is a historical summary of past commissions received by IAC on the particular accounts in question. In other words, Plaintiff's Exhibit No. 6 contains historical data regarding commissions that were paid in the past, but paragraph 9 of the Hansen/IAC employment agreement calls only for repayment of commissions to be paid to Hansen in the future as a result of his violation of the agreement. Plaintiff's Exhibit No. 6 is simply inapposite.

Furthermore, Richard Marmillion, president, director and owner of IAC, testified that the best data for calculating damages would come from Swan:

Q. [By plaintiff's counsel] Mr. Marmillion, is there any better data for you to state what the loss was to Insurance Associates as a result of the transfer of these policies to the Swan Agency? Is there any better data than that contained in Plaintiff's Exhibit 6 that you know of?
A. The only data would really be that which would be in Swan's office.

Plaintiff's Exhibits 7 and 8 contain the very data Mr. Marmillion referred to and, rather than being a historical summary of commissions paid in the past, are a summary of commissions that became payable to Hansen as a result of his violation of the employment agreement. Accordingly, the trial court did not err in using the $34,956.67 figure from Plaintiff's Exhibits 7 and 8, rather than the $43,073.86 figure from Plaintiff's Exhibit No. 6.

## IV

■ IAC next contends that the trial court erred in refusing to award it prejudgment interest. "Prejudgment interest is allowed where the amount claimed is liquidated or may be ascertained by mathematical computation." *McGill v. Lester,* 108 Idaho 561, 565, 700 P.2d 964, 968 (Ct.App. 1985). *Accord Davis v. Professional Business Services, Inc.,* 109 Idaho 810, 712 P.2d 511 (1985). *Cf. Obray v. Mitchell,* 98 Idaho 533, 567 P.2d 1284 (1977). Here, however, the amount claimed by IAC was not liquidated, nor was it ascertained by mathematical computation before judgment was rendered. The employment agreement had no liquidated damages provision, and the parties made numerous attempts at ascertaining the appropriate amount of damages before judgment for $34,956.67 was ulti-

mately entered. In its amended complaint, IAC prayed for "an amount in excess of $35,000." Then, during trial IAC offered Plaintiff's Exhibit No. 6, claiming it was damaged in the amount of $43,073.86. IAC, however, also offered Plaintiff's Exhibits Nos. 7 and 8, showing a $34,956.67 total. Finally, further complicating any potential damages computation, Richard Marmillion, president, director and owner of IAC, testified that he did not know the amount IAC lost as a result of Hansen's breach of the contract:

> Q. [By defendants' counsel] Mr. Marmillion, do you know what commission income would have been generated for those insurance policies described in Plaintiff's Exhibit 6 had they renewed in subsequent years or in the subsequent year with Insurance Associates as opposed to some other agency?
>
> A. No.

It was not until the trial court considered this matter for the second time and rendered its judgment that the amount of damages finally was ascertained. Accordingly, the trial court's denial of prejudgment interest was proper and we affirm.

## V

IAC next contends that the trial court erred in failing to award it judgment against Swan upon a multitude of theories. Each separate theory will be considered in turn.

### A.

*Tortious Interference With Contract*

■ Relying on *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974), IAC contends that Swan committed the intentional tort of interference with contract. However, the trial court found that Swan had not intentionally interfered with the IAC/Hansen contract causing Hansen to breach the contract.[1] The record contains evidence which shows that Swan went to some lengths to ensure its non-interference with the agreement. Swan received a copy of the agreement within a few weeks of Hansen's employment. Swan immediately consulted an attorney, and counsel's opinion was that the contract only prohibited Hansen from soliciting those accounts with which Hansen had business relations during the term of the non-competition agreement. Based upon that advice, Swan told Hansen not to contact customers which had been obtained during the term of the agreement, and further advised Hansen not to breach the agreement. The fact that the district court agreed with Swan's interpretation of the agreement, even though that interpretation was rejected by the Court of Appeals, was no doubt a factor which the district court considered in concluding that there was no intentional interference with the contract by Swan. *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974).

■ There is evidence in the record to support the trial court's finding that Swan did not intentionally interfere with the IAC/Hansen employment agreement—evidence which, if believed by the trial court, demonstrates that Swan made a bona fide good faith effort to ensure that no interference would result.[2] That evidence is suffi-

---

1. In its third and final memorandum opinion and order the district court stated:

    [T]he evidence does not establish that the Swan Agency intentionally interfered with the contractual relationship between Mr. Hansen and the plaintiff. There was no contact with Mr. Hansen by the Swan Agency prior to the time Mr. Hansen was terminated by Insurance Associates. He was not induced to leave by the Swan Agency. He was terminated by Insurance Associates. After his employment the Swan Agency did not encourage him to breach his contract. It acted in accordance with the advice of counsel and the terms of this court's preliminary injunction. It did not intentionally encourage a breach of the contractual relationship.

2. We do not suggest, by our affirmance of the trial court's ultimate finding that there was no intentional interference with the contractual relationship between IAC and Hansen, that advice of counsel by itself is a defense to a claim of intentional interference with a contractual arrangement. However, it is a factor to be considered by the trial court in determining whether the interference of the defendant was intentional. *Barlow v. International Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102 (1974).

cient to support the court's finding that there was no intentional interference with the contract. I.R.C.P. 52(a).

### B.

*Participating in, inducing, ratifying, approving and/or adopting Hansen's breach of contract*

■ IAC contends that Swan should be held liable as a joint *tortfeasor* because it participated in, induced, ratified, approved and/or adopted Hansen's breach of contract. However, in order for Swan to have been a joint tortfeasor with Hansen, Hansen must have committed a tort against IAC. IAC fails to cite any authority holding that a joint tortfeasor relationship occurs when one party participates in, approves, ratifies and/or adopts another party's breach of contract. While Swan was alleged to have committed a tort by interfering with IAC's contractual relationship with Hansen, that does not mean that Hansen, by breaching his contract, has committed a tort. Hansen would only have committed a tort if "a breach of a tort duty is alleged, which duty arose separate and apart from the breach of contract." *Steiner Corp. v. American Dist. Telegraph*, 106 Idaho 787, 790, 683 P.2d 435, 438 (1984).

Citing *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 112 P.2d 631 (1941), IAC does argue that unjustifiably inducing a breach of contract constitutes a tort by Swan, and that Hansen's participation makes it a joint tort. However, the trial court made a finding of fact, which we have affirmed in Part V(A) above, that Swan did not induce Hansen to breach the contract. In its final memorandum opinion and order, the court stated: "He [Hansen] was not induced to leave by the Swan Agency. He was terminated by Insurance Associates. After his employment *the Swan Agency did not encourage him to breach his contract.*" Since the trial court's factual findings in this regard are not clearly erroneous, but rather are supported by substantial competent evidence (see Part V(A), above), there is no merit to appellant's claim that Swan should be held liable as a joint tortfeasor. *Barlow v. International Harvester Co.*, 95

Idaho 881, 893, 522 P.2d 1102, 1114 (1974) ("'The issue in each case is whether the actor's conduct is justifiable under the circumstances. . . .' . . . 'What is "unwarranted interference" depends on the facts of each case.' . . . When an action involving interference with a contract is tried to a jury, it is ordinarily for the jury to determine whether the interference of the defendant was justified.").

### C.

*Conspiracy*

■ IAC next contends that Swan and Hansen conspired to solicit IAC's customers in violation of the employment agreement. Even if there were some legal basis for such a conspiracy claim, which on this record we decline to consider, the trial court's response to this allegation was simply, "The evidence does not support such a theory." As the trier of fact in this case, the trial judge was entitled to weigh the evidence. It is apparent from the above quoted statement that he felt that the evidence did not support such a conspiracy finding. The trial court's finding is not "clearly erroneous"; therefore, it will not be set aside. I.R.C.P. 52(a).

### D.

*Idaho Trade Secrets Act*

IAC contends that it is entitled to relief under the Idaho Trade Secrets Act, I.C. § 48–801 et seq. We disagree. In its original memorandum opinion the district court found that "Insurance Associates may well have trade secrets, but the evidence does not establish that Mr. Hansen or the Jess Swan Agency used any trade secrets. Therefore, the Plaintiff's claim fails in this regard." On appeal, the Court of Appeals expressly "conclude[d] that the findings of fact made by the district court are supported by the evidence, are not clearly erroneous and should not be set aside. I.R.C.P. 52(a)." 111 Idaho at 206–207, 723 P.2d at 190–191. Accordingly, this issue has been decided. *Airstream, Inc. v. CIT Financial Services, Inc.*, 115 Idaho 569, 768 P.2d 1302 (1988); *Matter of Barker*, 110 Idaho 871,

719 P.2d 1131 (1986); *Suitts v. First Security Bank of Idaho,* 110 Idaho 15, 713 P.2d 1374 (1985).

### E.

### Unfair Competition

IAC next contends that Swan and Hansen engaged in unfair competition when they used trade secrets acquired by Hansen during his employment at IAC. However, neither Hansen nor Swan used any trade secrets. Accordingly, this claim too must fail.

### F.

### Unjust Enrichment

■ In his final memorandum opinion and order, filed July 23, 1987, the district judge discussed IAC's unjust enrichment theory as follows:

> The next theory to be considered is whether the Swan Agency has been unjustly enriched. The plaintiff will, as a consequence of this proceeding, have a judgment against Mr. Hansen for the losses it suffered in the aftermath of his termination by the plaintiff. At the threshold it does not appear that the record establishes the amount of unjust enrichment, if any, the Jess Swan Agency received. That agency obtained commissions as a result of Mr. Hansen's efforts. It also employed Mr. Hansen and gave service. Unjust enrichment is not coextensive with the commissions. To so rule would be to apply a penalty. Beyond the failure of proof of damages this court concludes that the plaintiff is not entitled to the equitable relief of the theory of unjust enrichment. It is an equitable theory. The plaintiff must be in a position of having done equity. In this case it used unequal bargaining power to exact valuable rights from an employee at will whose only choice was to agree or be fired. He obtained nothing but a continued right to work until the

plaintiff said he could not work which might be a very short time—in fact it was continued employment for only about eight months. The plaintiff itself had benefitted from customers Mr. Hansen brought with him from a prior agency.[3] He was employed by the defendant Swan Agency which acted within the legal rights its attorney and this court thought it had. The Swan Agency provided compensation to Mr. Hansen and service to the customers who did business where and with whom they wanted. The plaintiff provided no service to the customers who exercised their right of choice and did business where they wished.

> To conclude that the plaintiff has acted equitably or that the defendant has been unjustly enriched stretches this equitable concept beyond fair play. The plaintiff has a remedy against the person who breached the contract imposed upon him.

The trial court did not err in its decision on this issue.

### VI

■ Finally, IAC contends that the trial court erred in refusing to award it punitive damages. We again disagree. As the trial court stated on remand:

> This is clearly not a case for punitive damages against either Mr. Hansen or the Swan Agency. If this court could not read the agreement correctly, it can hardly be outrageous conduct on the part of the defendants that they did not read it as has the Court of Appeals.

We agree with the trial court's analysis and affirm its denial of punitive damages.

Judgment affirmed. Costs to respondents. No attorney fees on appeal.

BOYLE and McDEVITT, JJ., and McFADDEN, J. Pro Tem., concur.

---

**3.** Before working for IAC, Hansen worked for Campbell & Company, another independent insurance agency competing with IAC and Swan. When Hansen began his employment with IAC, he brought with him three insurance customers that had previously been with Campbell & Company.

JOHNSON, Justice, concurring and dissenting.

I concur with all parts of the majority opinion, except part V(A), concerning tortious interference with contract. From that part of the opinion, I dissent.

In my view, the trial court implicitly ruled that IAC had established a prima facie case that Swan tortiously interfered with the IAC/Hansen agreement, but that there was justification for the interference. In *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974), this Court stated that a prima facie case of the tort of interference with a contract is established when the plaintiff proves: "(a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach." 95 Idaho at 893, 522 P.2d at 1114. The Court continued: "Once the plaintiff has made a prima facie case, the burden is on the defendant to prove justification." *Id.*

Although the trial court stated in its final memorandum opinion and order that the evidence did not establish that Swan intentionally interfered with the contractual relationship between Hansen and IAC, it is clear to me that the trial court was really addressing the question of justification and not whether there was a prima facie case of interference with contract. Otherwise, the trial court's reference to Swan's acting in accordance with the advice of counsel and the terms of the trial court's preliminary injunction makes no sense.

The record indicates that the advice of counsel referred to by the trial court was given on or about November 1, 1982. The advice was that the IAC/Hansen agreement permitted Hansen to solicit customers to whom he had sold insurance while employed by IAC before February 12, 1982—the date of the agreement. The Court of Appeals determined that this advice was legally incorrect. I am not prepared to allow tortious interference with contract to be justified by reliance on erroneous legal advice. An erroneous interpretation of a contract by a lawyer is entitled to no more weight in attempting to justify an interference with the contract than is an erroneous interpretation by the lawyer's client. *Meyer v. Washington Times Co.*, 76 F.2d 988, 993 (D.C.Cir.1935).

I am prepared to accept Swan's reliance on the trial court's preliminary injunction as justification for interference after May 23, 1983—the date the preliminary injunction was filed. Among other things, the injunction enjoined Hansen from soliciting insurance business from any of the customers of IAC to whom he had sold insurance during the period from February 12, 1982, to October 6, 1982—the date of Hansen's employment by Swan. Although this restriction on Hansen's activities was subsequently found to be too limited by the Court of Appeals, the preliminary injunction gave Swan justification after May 23, 1983, for allowing Hansen to sell insurance to customers of IAC to whom he had sold insurance prior to February 12, 1982.

The exhibits reveal that among the insurance policies sold by Hansen after Swan learned of the IAC/Hansen agreement and before the preliminary injunction was issued by the trial court were several that insured customers to whom Hansen had sold insurance while he was employed by IAC before the date of the agreement. After Swan had received a copy of the agreement, Swan instructed Hansen that he could not solicit any customers to whom he had sold insurance while he was employed by IAC after the date of the agreement. The only reasonable implication from this instruction was that Hansen could solicit customers to whom he had sold insurance while he was employed by IAC before the date of the agreement. I can only interpret this as encouragement to Hansen that led to his breach of the agreement.

In my view, there was no legal basis for a finding of justification by the trial court. I would reverse that portion of the trial court's decision and remand for a determination of the amount of damages to which IAC is entitled.