5 P.2d 973

Jeane F. SWANSON, Plaintiff–Respondent–Cross Appellant-Respondent on Appeal, Cross Appellant on Appeal,

v.

George SWANSON, Defendant–Appellant–Cross Respondent, Appellant on Appeal, Cross Respondent on Appeal.

No. 25277.

Supreme Court of Idaho,
Boise, January 2000 Term.

June 30, 2000.

Huntley, Park, Thomas, Burkett Olsen & Williams, Boise, for appellant. W. Anthony Park and Daniel E. Williams argued.

Hyde, Wetherell, Bray, Haff & French, Chtd., Boise, for respondent. David W. Hyde argued.

## NATURE OF THE CASE

SILAK, Justice.

This is an appeal from the divorce proceedings of appellant George Swanson (George) and respondent Jeane F. Swanson (Jeane).

## I.

## FACTS AND PROCEDURAL BACKGROUND

### A. Facts

The Swansons were married on June 28, 1957. During the marriage, George was employed by the Morrison–Knudson Company (M–K), and Jeane was employed as a teacher by the Boise School District.

From 1963 until 1976, George's father lived rent-free with the Swansons in their community property home. During that time and for several years thereafter, Jeane provided many personal services to George's father. In 1980, George's father made an *inter vivos* gift to George of 2,684 shares of M–K stock. George sold the stock and invested the proceeds in certificates of deposit. In his will, George's father purported to leave the same M–K stock to George "for the reason that my son has taken me into his home during my last years and has looked after my material needs and comforts."

In 1986, George was terminated by M–K. As part of a termination settlement, George

and M–K entered a Consultation Contract and a Release Agreement providing for a lump sum of $225,000 at the time of signing and annual $39,000 installments until 1999, when George would turn sixty-five years of age.

In 1987, George and his sister each inherited from their mother a one-half interest in real property located on Vista Avenue in Boise (the Vista Property). George purchased his sister's interest in the Vista Property by transferring to her his separate property interest in real property located in McCall, Idaho, in addition to the proceeds from a secured $25,000 loan that George obtained from ABC Bank. George paid this loan later in 1987 with the proceeds from the M–K settlement.

## B. Procedural Background

Jeane filed an action for divorce on January 30, 1992. Judge Thomas F. Neville ruled that the M–K stock and its proceeds were George's separate property, but that the community was entitled to $133,118.99 of the stock proceeds as reimbursement from George for services provided to George's father. The trial court imposed a constructive trust in that amount on George's separate property. The trial court also ruled that the M–K settlement proceeds were community property. The trial court also ruled that the community had paid George's $25,000 separate debt to ABC bank, and that the community was entitled to reimbursement with interest at 12% from the date of payment. The trial court also ruled that the community was entitled to reimbursement for capital gains taxes paid on the sale of the M–K stock plus interest from the date of payment. The trial court entered a judgment and decree of divorce on March 1, 1994.

On appeal to the district court, several of the trial court's rulings, including that the M–K settlement proceeds were community property, were affirmed. The judgment was partially vacated, however, to the extent that it reimbursed the community for the value of services provided to George's father, to the extent it awarded prejudgment interest on the reimbursement for the services provided to George's father, and to the extent it im-

posed a constructive trust upon George's separate property. The district court also ordered the trial court to reconsider its award of prejudgment interest to Jeane on the community property used to pay George's separate loan and tax obligations. The case was then remanded to the magistrate division. Neither party appealed the district court's decision.

On remand, the case was assigned to Magistrate Judge Russell A. Comstock because Judge Neville had become a district judge during the first appeal. On remand, George filed a motion to reopen the characterization of the M–K settlement proceeds. In support of the motion, George argued that Jeane had changed her position with respect to the character of the settlement property by signing a petition before the United States Tax Court. In the petition, both parties jointly asserted that the M–K settlement proceeds were in the nature of a personal injury settlement. The trial court modified the divorce decree in accordance with the district court's appellate ruling, held a number of hearings, and entered an amended judgment and divorce decree.

While the appeal from the amended order was pending before the district court, the United States Tax Court entered a tax refund decision which was based on a stipulation between George and the IRS that the M–K settlement payments were non-taxable personal injury compensation. The case was remanded once again to determine whether the tax court's decision would have any effect on the trial court's decision. Notwithstanding the tax court's decision, the trial court declined to reconsider the community property characterization of the M–K termination settlement. The trial court issued its third amended judgment and decree of divorce. The district court affirmed the trial court's decision, and George appealed.

## II.

## ISSUES ON APPEAL

The appellant presents the following issues on appeal:

A. Whether the trial court erred in declining to reopen its characterization of the M–K proceeds as community property.

B. Whether the trial court erred in ruling that the M–K settlement proceeds are community property.

C. Whether the trial court erred in not granting the motion to reconsider the community reimbursement for the payment of George's separate debts.

D. Whether the district court erred in affirming the findings, orders and decrees of the trial court.

On cross appeal, Jeane raises the following issue:

E. Whether the trial court erred in reversing its previous award of prejudgment interest on the community reimbursement claims.

## III.

### STANDARD OF REVIEW

■■■ When reviewing the decision of a district court acting in its appellate capacity over a magistrate court, the Supreme Court reviews the magistrate judge's decision independently of, but with due regard for, the district court's intermediate appellate decision. *See Henderson v. Smith,* 128 Idaho 444, 447, 915 P.2d 6, 9 (1996); *Balderson v. Balderson,* 127 Idaho 48, 51, 896 P.2d 956, 959 (1995). The findings of the magistrate judge will be upheld by this Court if they are supported by substantial, competent evidence in the record. *See Balderson,* 127 Idaho at 51, 896 P.2d at 959. This Court exercises free review on issues of law encountered upon such review. *See id.*

## IV.

### ANALYSIS

A. **The Trial Court Did Not Err In Denying The Motion To Reopen The Characterization Issue.**

George argues that the trial court erred in refusing to reconsider on remand its community property characterization of the M–K settlement proceeds. On the second appeal, the district court affirmed the trial court's refusal to reopen the issue, citing the "law of the case" doctrine as discussed by this Court in *Thompson v. Pike,* 125 Idaho 897, 901, 876 P.2d 595, 599 (1994), and *Suitts v. First Security Bank,* 110 Idaho 15, 21–22, 713 P.2d 1374, 1380–81 (1985). George urges this Court to reverse, arguing that the "law of the case" rule applies only in cases which have been remanded to the district court after appeal to the state's court of last resort.

1. **The "law of the case" doctrine.**

■■■ The doctrine of "law of the case" is well established in Idaho and provides that "upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal...." *Suitts v. First Sec. Bank of Idaho,* 110 Idaho 15, 21, 713 P.2d 1374, 1380 (1985) (quoting *Fiscus v. Beartooth Elec. Coop., Inc.,* 180 Mont. 434, 591 P.2d 196, 197 (1979)).

■■■ George argues that the law of the case doctrine only precludes reopening issues in cases after they have ascended to the state's court of last resort and are subsequently remanded. While the *Suitts* case explicitly discusses the rule in the context of appeals to this Court, earlier cases refer to the application of the doctrine in terms of appellate courts generally. *See, e.g., Creem v. Northwestern Mut. Fire Ass'n of Seattle, Wash.,* 58 Idaho 349, 352, 74 P.2d 702, 703 (1937) (stating that where the case is remanded to the trial court, the case "must be tried in the light of and in consonance with the rules of law as announced by the appellate court in that particular case. This is what we call 'the law of the case.' "); *Brinton v. Johnson,* 41 Idaho 583, 592, 240 P. 859, 861 (1925) (stating that "[a] decision by the appellate court upon a point distinctly made and essential to its determination upon a previous appeal is in all subsequent proceed-

ings in the same case a final adjudication.").[1]

Additionally, Idaho courts have applied the "law of the case" doctrine to preclude relitigation of issues in cases that did not reach the Supreme Court during the first appeal. In *Insurance Associates Corp. v. Hansen*, 116 Idaho 948, 782 P.2d 1230 (1989), for example, this Court held that the trial court's findings in the original decision were "the law of the case" on remand, where the Court of Appeals had concluded, in connection with remand, that the trial court's findings were not clearly erroneous. *See id.* at 950–51, 782 P.2d at 1232–33. "Accordingly," this Court concluded, "the facts having been decided, they are final, they have become the law of the case, and the Court of Appeals' pronouncement must be adhered to, both in the trial court and on subsequent appeal." *Id.* (citing *Airstream, Inc. v. CIT Financial Services, Inc.*, 115 Idaho 569, 768 P.2d 1302 (1988); *Matter of Barker*, 110 Idaho 871, 719 P.2d 1131 (1986); *Suitts*, 110 Idaho 15, 713 P.2d 1374 (1985)).

Similarly, the Court of Appeals has held that where the district court acts in an appellate capacity, and appeal to the Supreme Court is subsequently dismissed by stipulation, the rulings of the district court "became final rulings in the case, not subject to attack in this appeal, and which stated the law of the case that the magistrate—and even this appellate court—must follow in this appeal." *Wulff v. Peralta*, 123 Idaho 567, 568, 850 P.2d 216, 217 (Ct.App.1993).

Applying the "law of the case" doctrine to cases which do not reach the Supreme Court during the first appeal would help ensure consistent results in the appellate process on all levels. As the Court of Appeals has observed:

> Furthermore, "[t]he doctrine of the law of the case provides that where an appellate court states a principle of law in deciding a case, that rule becomes the law of the case and is controlling both in the lower court and on subsequent appeals as long as the facts are substantially the same." *Office of*

*State Eng'r v. Curtis Park Manor*, 101 Nev. 30, 692 P.2d 495, 497 (1985). The decision on an issue of law made at one stage of a proceeding becomes precedent to be followed in successive stages of that same litigation. "[L]ike stare decisis it protects against relitigation of settled issues and assures obedience of *inferior* courts to decisions of *superior* courts." *NAACP, Detroit Branch v. Police Officers Ass'n*, 676 F.Supp. 790, 791 (E.D.Mich. 1988).

*Frazier v. Neilsen & Co.*, 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct.App.1990) (emphasis added). We hold, therefore, that the "law of the case" doctrine applies here even though the first appeal was not taken to this Court.

■ George also argues that the "law of the case" rule does not apply here because there was no final order or judgment from which he could have appealed to this Court, citing *State Dept. of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 595 P.2d 299 (1979). This argument is unpersuasive. In *Willys Jeep*, the defendant appealed to the district court an order denying summary judgment entered by the magistrate court. The district court ruled that summary judgment should have been granted, and reversed and remanded to the magistrate. The state did not appeal the district court's decision at that time, but appealed the judgment that was subsequently entered by the magistrate to the district court. The district court affirmed, and the state then appealed to this Court.

The *Willys Jeep* Court held that the dismissal was improper because the district court erred in conducting the first intermediate appeal from the magistrate court's order denying summary judgment. The Court also observed that the state's failure to appeal from the district court's first appellate decision did not preclude the second appeal because "an order denying a motion for summary judgment is not a final judgment for purposes of appeal." 100 Idaho at 152, 595 P.2d at 301. Appeal was possible in this

---

1. These cases discuss the "law of the case" rule as applied to the decisions of "appellate courts" in general, even though district courts have taken intermediate appeals from the magistrate courts

since the early history of this state's jurisprudence. *See, e.g., State v. Quong*, 8 Idaho 191, 67 P. 491 (1902); *Warner v. Fremont County*, 4 Idaho 591, 43 P. 327 (1895).

case, however, even though the district court remanded the decision to the magistrate's division after the first intermediate appeal. Idaho Appellate Rule 11(a)(2) provides that an appeal as a matter of right may be taken to this Court from "[d]ecisions by the district court dismissing, affirming, reversing or remanding an appeal." Since George did not avail himself of this avenue for appealing the trial court's ruling on the characterization issue, we hold that the "law of the case" doctrine precludes him from reopening the issue at this time.

### 2. The trial court did not err in refusing to reopen the characterization based on the proceedings before the United States Tax Court.

■ George argues that the trial court abused its discretion in applying the "law of the case" doctrine in refusing to re-open the characterization of the M–K settlement proceeds.

■ The magistrate court believed it was within its discretion to reconsider the characterization issue, citing *Davison's Air Service, Inc. v. Montierth*, 119 Idaho 967, 812 P.2d 274 (1991). In that case, this Court wrote that "[t]he trial court's decision to reopen [a] case and take new evidence prior to entry of judgment was within its discretion...." *See id.* at 968, 812 P.2d at 275. The *Davison* case, however, did not implicate the "law of the case" doctrine because the motion to reopen was made before an appeal was taken. In *Davison*, the trial judge issued a memorandum opinion, but had not entered a judgment, at the time one of the parties made a motion to reopen. On appeal, the

*Davison* Court recognized the trial court's discretionary authority to reopen the issue before a final judgment had been entered, and held that the trial court did not abuse its discretion. *See id. Davison* stands only for the proposition that a court has discretion to reopen an issue before a judgment has been entered.

In this case, however, the trial court had entered a final judgment for the purposes of appealability under I.R.C.P. 83(a), and the subsequent appeal had been prosecuted before the district court, before the motion to reopen the issue was made. Since this case involves an appeal and subsequent remand, the "law of the case" doctrine binds the lower court to follow the law as established during the appeal, and therefore precludes reopening any issues that were raised on appeal and passed upon by the appellate court. *See Suitts*, 110 Idaho at 15, 713 P.2d at 1380; *Insurance Associates*, 116 Idaho at 950–51, 782 P.2d at 1232–33; *Creem*, 58 Idaho at 352, 74 P.2d at 703; *Wulff*, 123 Idaho at 568, 850 P.2d at 217; *Frazier*, 118 Idaho at 106, 794 P.2d at 1162.[2]

■ The trial court was aware that reopening the characterization issue under the circumstances of this case would be unusual, at best: "[A]bsent fraud, the Court is not aware of authority which permits retrial of issues after judgment, appeal and remand based upon conduct occurring after the judgment and appeal.... To the extent that a court has discretionary power to reopen the trial record under the circumstances existing in this case, I decline to exercise it for several reasons."[3] The trial court was not persuaded that the represen-

---

**2.** This Court has held that a court may reopen an issue or findings as to matters "not passed on by the appellate court." *Hutchins v. State*, 100 Idaho 661, 666, 603 P.2d 995, 1000 (1979). The *Hutchins* Court further observed: "Upon remand of this case the trial court should determine its findings of fact and conclusions of law, with respect to *the issues not dealt with in our opinion* ... without being bound in any way by its findings and conclusions *on such issues*." *Id.* In the instant case, however, the district court expressly affirmed the trial court's ruling that the M–K settlement proceeds were community property. The law of the case doctrine therefore applies to preclude reopening the characterization issue.

**3.** While some states, most notably Kansas, take a more discretionary view of the "law of the case," the Idaho cases establish that the application of the rule is mandatory. *Compare State v. Collier*, 952 P.2d 1326 (Kan.1998) (Doctrine of "law of the case" is a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so); *Wulff*, 123 Idaho at 568, 850 P.2d at 217 (holding that even appellate court on subsequent appeals is bound by rulings of appellate court in previous appeal).

tations of the parties in the federal tax court proceedings justified the non-application of the "law of the case" doctrine. We therefore hold that the trial court correctly refused to reopen the characterization issue.

**B. It Is Unnecessary To Determine Whether The Trial Court Erred In Finding That The M–K Settlement Proceeds Were Community Property.**

Since we hold that the law of the case doctrine precludes reopening the characterization issue, it is unnecessary to determine whether the trial court erred in ruling the M–K settlement proceeds were community property.

**C. The Trial Court Did Not Err In Declining To Reopen The Reimbursement Issue.**

The trial court ruled that George was required to reimburse the community for the expenditure of community funds used to pay the capital gains tax on the sale of George's M–K stock. The trial court also required George to reimburse the community for funds used to repay the loan for the Vista Property purchase. George appealed this ruling to the district court.

In June 1995, after the district court issued its first appellate decision, this Court released its opinion in *Bliss v. Bliss,* 127 Idaho 170, 898 P.2d 1081 (1995). In *Bliss,* the Court held that the community is not entitled to reimbursement if the party seeking reimbursement cannot show that community funds were used to enhance the value of the other party's separate property. *See id.* at 173, 898 P.2d at 1084. On remand, George argued that the community was not entitled to reimbursement under the "new" rule set forth in *Bliss,* and requested that the issue be reheard and that the *Bliss* rule be applied. The trial court declined to reopen the issue, observing that "the *Bliss* case did not fundamentally change Idaho law regarding reimbursement claims made by spouses on behalf of the community." The trial court then ruled that since George did not appeal the issue after the first appeal to the district court, the district court's decision was bind-

ing as "the law of the case." The trial court also observed that it was not certain whether *Bliss,* to the extent it changed Idaho law concerning reimbursements, should be given prospective or retroactive effect. George now argues that the trial court erred in refusing to reconsider the issue because *Bliss* pronounced a new rule that would affect the outcome of this case.

In *Bliss,* this Court discussed the general rule for community reimbursements: "It is well established that when community funds are used to enhance the value of one spouse's separate property, such enhancement is community property for which the community is entitled to reimbursement, unless such funds used for enhancement are intended as a gift." *Id.* at 172, 898 P.2d at 1083 (citing *Suchan v. Suchan,* 106 Idaho 654, 661, 682 P.2d 607, 614 (1984); *Suter v. Suter,* 97 Idaho 461, 465, 546 P.2d 1169, 1173 (1976); *Gapsch v. Gapsch,* 76 Idaho 44, 53, 277 P.2d 278, 283 (1954)). The *Bliss* Court also observed that the party seeking such reimbursement carries the burden of demonstrating that the community expenditures have enhanced the value of the separate property and the amount of the enhancement. *See Bliss,* 127 Idaho at 173, 898 P.2d at 1084 (citing *Hooker v. Hooker,* 95 Idaho 518, 521, 511 P.2d 800, 803 (1972)).

In *Bliss,* the husband used community funds to pay a $15,000 judgment debt to his former wife. After reciting the reimbursement rules as set forth in the cases cited above, the *Bliss* Court observed:

The facts in this case take it outside the direct application of the reimbursement rule as cited in *Suchan, Suter,* and *Gapsch.* The community funds were not used to enhance the value of [Mr. Bliss'] separate property. They were used to pay [his] *antenuptial, unsecured* debts. We can locate no Idaho statute or case allowing reimbursement under these circumstances. Indeed, we believe allowing reimbursement would be inconsistent with established precedents.

*Bliss,* 127 Idaho at 172–73, 898 P.2d at 1083–84 (emphasis added). The *Bliss* Court also observed that it was not sufficient to find that the spouse's "separate estate had been

'enhanced' by the elimination of separate debts," because "past precedents have required the enhancement of separate *property.*" *Id.* at 173, 898 P.2d at 1084 (emphasis in original). The holding in *Bliss* did not, therefore, express a new rule governing reimbursements, but only held that reimbursement is not available when community property is used to repay unsecured premarital debts because, under the general rule, there was no enhancement to the value of separate property. *See id.*

In the instant case, the district court required reimbursement of two sums: first, $25,000 used to pay the secured loan George obtained to purchase the Vista Property from his sister; and second, $21,528.15 used to pay the capital gains tax from the sale of George's separate property M–K stock. These obligations both arose during the marriage, unlike the premarital debt held nonreimbursable in *Bliss.* We hold that the money used to pay the loan on the Vista Property enhanced George's equity in that property, and the $25,000 reimbursement to the community was proper. *See Gapsch,* 76 Idaho at 53, 277 P.2d at 283. This Court has also held that separate property tax liability is likewise reimbursable under this rule. *See Shovlain v. Shovlain,* 78 Idaho 399, 402, 305 P.2d 737, 738 (1956) (citing *Gapsch,* 76 Idaho 44, 277 P.2d 278). Since reimbursement would have been proper even under the rule as expressed in *Bliss,* we hold that the trial court did not err in declining to reopen the issue.

**D. It Is Unnecessary To Address Whether The District Court Erred In Affirming The Findings, Orders and Decrees Of The Trial Court.**

George argues that the district court erred in affirming the conclusions reached by the trial court. It is unnecessary to address this argument, however, because the standard of review applied to a case in which the district court acts in an appellate capacity makes the issue irrelevant. In such situations, as noted above, the Supreme Court reviews directly the decision of the trial court, making it unnecessary to address errors which an appellant believes the district court may have committed. *See Henderson,* 128 Idaho at

447, 915 P.2d at 9; *Balderson,* 127 Idaho at 51, 896 P.2d at 959.

**E. The Trial Court Did Not Err In Reversing Its Previous Award Of Prejudgment Interest On The Community's Reimbursement Claims.**

 Section 28–22–104 of the Idaho Code provides for the award of prejudgment interest on "[m]oney after the same becomes due." I.C. 28–22–104(2). Prejudgment interest awards are appropriate where the amount of liability is liquidated or capable of ascertainment by a mere mathematical calculation in order to fully compensate the injured party. *See Doolittle v. Meridian Joint School Dist.,* 128 Idaho 805, 814, 919 P.2d 334, 343 (1996) (citing *Stoor's Inc. v. Dept. of Parks and Recreation,* 119 Idaho 83, 86, 803 P.2d 989, 992 (1990)).

The trial court initially awarded prejudgment interest to Jeane on her share of the funds reimbursed to the community. George argued during the first appeal to the district court that no interest should have been awarded. The district court noted that while the trial court's decision to award interest "appear[ed] to be proper," the trial court had failed to provide any analysis supporting its decision to award the interest. The district court also discussed the difficulty of ascertaining the date on which a community reimbursement debt becomes due, and observed that "in the absence of an agreement to the contrary, interest ordinarily should not accrue on a particular item until the entire asset and debt picture is resolved, which usually will occur on the date of the divorce decree." The district court remanded the issue, ordering the trial court to "explain the basis of its decision [regarding the interest award] and, if appropriate, to modify its decision."

On remand, the trial court ruled that no prejudgment interest should be awarded. The court explained its decision:

> After reviewing the findings of fact made by Judge Neville, this Court finds no evidence of either fraud or an agreement between the parties regarding the transactions. During marriage it is not uncommon that separate obligations are paid

with community funds without reference to reimbursement by a certain date. Claims for reimbursement are rarely asserted until a divorce complaint is filed. Where there are multiple community reimbursement claims asserted by the parties, the validity of the claims must first be ascertained and, if appropriate, offsets made. Consequently, the Court agrees with [the district court's] opinion that interest should not normally accrue on a reimbursement claim until all assets and debts are identified for division. In this case, the Court finds no evidence that the parties intended that the community be reimbursed by a certain date. Therefore, the Court concludes that the reimbursement claims did not become due prior to the divorce decree and declines to award prejudgment interest.

On cross-appeal, Jeane argues that the trial court abused its discretion in reversing its award of prejudgment interest. Jeane argues that in Idaho, prejudgment interest is allowed on a liquidated amount or an amount ascertainable by mathematical calculation, "especially when the case involves restitution or a repayment of funds." Jeane further asserts that where a person has been deprived of the use of a principal sum of money from a certain date, and the principal sum of money is liquid, the party cannot be made whole unless it is granted prejudgment interest on its money from the date on which the party is deprived of those funds.

The money for which Jeane claims prejudgment interest is a liquidated amount, ascertainable by common mathematical processes. Therefore, the focal point of the Court's analysis in this case should be the language of I.C. 28-10-104, which provides that interest begins to accrue "after the [money] becomes due." While the community is theoretically entitled to reimbursement as soon as a spouse borrows community funds for separate purposes, reimbursement is never an issue as a practical matter until matrimonial harmony is disrupted and divorce proceedings are well under way. Since both spouses have the right to control and manage community property, *see* I.C. 32-912, community funds are often used for separate purposes, usually without any formal accounting.

In this case, the trial court held that there was no evidence to show that George fraudulently or unfairly applied community funds toward his separate purposes. The trial court also found that there was no agreement between the parties that the money would ever be asked for. The evidence on the record suggests that Jeane acquiesced to the application of the M–K proceeds to George's separate obligations. We hold that the reimbursed funds did not become due until the court determined that Jeane was entitled to those funds.

## V.

## CONCLUSION

We hold that the trial court did not abuse its discretion in declining to reopen the characterization of the M–K settlement proceeds as community property. We also hold that even if the trial court erred by not reconsidering the reimbursement issue in spite of the *Bliss* decision, *Bliss* does not mandate a contrary ruling on that issue. On cross-appeal, we hold that the trial court did not err in reversing its prior award of prejudgment interest to Jeane on the community reimbursements. Because of the mixed result, no costs or fees are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.